# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| JAMES M. MCNAMARA,<br><br>      Plaintiff,<br>v.<br><br>HESS CORPORATION, et al.,<br><br>      Defendants. | CASE NO. 1:20-cv-060<br><br>JURY TRIAL DEMANDED |

## DEFENDANTS'
## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR A PROTECTIVE ORDER

COME NOW Defendants Hess Corporation ("Hess") and Hess Oil Virgin Islands Corp., now merged with and into Hess Oil New York Corp. ("HONYC") (collectively "Defendants"). Defendants submit this Memorandum in support of their Motion for a Protective Order precluding the depositions of Jacqueline Asafu-Adjaye, Eric Fishman, Robert Franzino, Timothy B. Goodell, Seth Menell, John P. Rielly, Barry Schachter, and Amy Stapleton. There is good cause for the protective order to prevent undue burden and expense to Defendants and the individuals noticed with no relevant knowledge about any matters in dispute, *see* Fed. R. Civ. P. 26(c), and because the discovery sought is unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient and less burdensome, *see* Fed. R. Civ. P. 26(b)(2)(C)(i).

## INTRODUCTION

This motion raises a straightforward issue concerning relevance and proportionality in discovery under Rule 26 of the Federal Rules of Civil Procedure. Plaintiff sought jurisdictional discovery to pursue the narrow question of whether a corporate transaction was "legitimate" under 28 U.S.C. § 1359. Defendants responded to dozens of discovery requests with the production of documents, answers to interrogatories, answers to requests for admission, and the offer of a

corporate witness under Rule 30(b)(6). The information produced by Defendants establishes beyond dispute that the transaction was legitimate, and that Plaintiff's arguments to the contrary are without merit. Plaintiff nevertheless insists on the depositions of eight individuals, none of whom possess unique knowledge relevant to the narrow question Plaintiff had raised. These depositions would be irrelevant, disproportionate to the needs of this case, and would impose undue burdens on Defendants and the individuals noticed for deposition. Indeed, under controlling precedent, the facts already disclosed by Defendants make the testimony purportedly sought by Plaintiff cumulative at best. Accordingly, the Court should grant Defendants' motion and enter the attached proposed protective order.

## PROCEDURAL HISTORY

Plaintiff filed this action against Hess and Hess Oil Virgin Islands Corp. ("HOVIC") in the Superior Court of the Virgin Islands on June 16, 2020. No. 1:20-cv-00060-WAL-GWC, Dkt. #1-2 (Complaint). On August 27, 2020, Hess timely removed the action to this Court. No. 1:20-cv-00060-WAL-GWC, Dkt. #1 (Notice of Removal). After nine months elapsed, Plaintiff filed a motion to remand on May 27, 2021. Dkt. #27 (Mot. to Remand). Soon thereafter, however, Plaintiff withdrew the motion to remand because Hess and HONYC, HOVIC's successor, agreed to engage in discovery on the limited jurisdictional issue of whether HONYC's New York citizenship had been "manufacture[d]" for the purpose of creating federal diversity jurisdiction. Dkt. #42 (Pl.'s Notice of Withdrawal). Since that time, Plaintiff has served, and HONYC has responded to, fifteen interrogatories, nine requests for production, and eleven requests for admission relating to the formation of HONYC and the merger of HOVIC with and into HONYC.

2

Ex. 1, July 30, 2021 HONYC's Resps. to Pl.'s First Set of Written Discovery. HONYC has also produced documents to Plaintiff on these issues and has offered to search for more documents. *See* Dkt. #49 (Pl.'s Mot. for Extension of Time to Complete Discovery) at 2.

On August 20, 2021, Plaintiff noticed eight one-hour depositions of witnesses purportedly knowledgeable about the merger of HOVIC into HONYC. Dkt. #45 (Pl.'s Notice of Depositions). The witnesses are:

- Jacqueline Asafu-Adjaye, Hess's Assistant Corporate Secretary, HONYC's Assistant Secretary;

- Eric Fishman, Hess's Corporate Treasurer;[1]

- Robert Franzino, Hess's Assistant Treasurer – Treasury Operations;

- Timothy B. Goodell, Hess's Executive Vice President, General Counsel, Corporate Secretary, and Chief Compliance Officer, HONYC's President;

- Seth Menell, Hess's Assistant Treasurer Capital Markets;

- John P. Rielly, Hess's Executive Vice President and Chief Financial Officer, HONYC's Vice President and Treasurer;

- Barry Schachter, Hess's Associate General Counsel and Assistant Corporate Secretary, HONYC's Secretary; and

- Amy Stapleton, Hess's Assistant Treasurer Midstream and Pension.

Specifically, the notice of deposition states that the depositions will be focused on the individuals' "personal knowledge of the HOVIC/HONYC merger, the reasons for such merger, and the documents which bear their name or signature." *Id.* at 1.

---

[1] Eric Fishman, Robert Franzino, Seth Menell, and Amy Stapleton's connection to HONYC is an authorization to sign documents for the establishment, maintenance, or closing of accounts for HONYC. Ex. 1, HONYC 000110.

3

On August 26, 2021, Plaintiff filed an unopposed motion for extension of time to complete discovery, noting that discovery was ongoing on the discrete jurisdictional issue of whether diversity had been "manufacture[d] . . . in violation of 28 U.S.C. § 1359." Dkt. #49 (Pl.'s Mot. for Extension of Time to Complete Discovery) at 1. The Court granted the motion. Dkt. #51 (Order Amending Scheduling Order). The parties have met and conferred about the noticed depositions as required under Local Rule 37.1 but have not reached an agreement.

## ARGUMENT

The Court should prevent Plaintiff from deposing a suite of Hess executives, employees, and attorneys in pursuit of a discrete jurisdictional argument that the Court should reject on the basis of facts already disclosed in discovery. Under Federal Rule of Civil Procedure 26, discovery is limited to "any nonprivileged matter" that is both "relevant to any party's claim or defense and proportional to the needs of the case." *Bass v. Fed. Express Corp.*, 2018 WL 1354125, at *2 (D.V.I. Mar. 15, 2018) (quoting Fed. R. Civ. P. 26(b)(1)). Consistent with these limitations on relevance and proportionality, the Federal Rules provide that "discovery shall be limited" if "the discovery sought is unreasonably cumulative or duplicative," or if it may be obtained from "some other source that is more convenient, less burdensome, or less expensive." *Dowling v. United States Gov't*, 2007 WL 9718444, at *1 (D.V.I. Oct. 18, 2007) (Cannon, Jr., U.S.M.J.) (quoting Fed. R. Civ. P. 26(b)(2)(C)) (quashing notice of depositions); *see Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111, 117 (3d Cir. 2020). In particular, discovery into discrete jurisdictional issues should be limited to matters "directly related" to the jurisdictional question. *Coates v. Ford Motor Co.*, 2019 WL 1118546, at *5 (D.V.I. Mar. 11, 2019) (denying motion to

compel where the requested discovery did not "bear significantly on issues pertaining to specific jurisdiction").

In addition to its power to limit discovery under principles of relevance and proportionality, this Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order is particularly appropriate where a party seeks "very broad g[a]uged discovery" that is "not relevant to the very limited factual context presented." *Luma Enterprises, Inc. v. Richemont Int'l, S.A.*, 2008 WL 11380419, at *3 (D.V.I. Mar. 19, 2008) (granting motion for protective order against topics in deposition notice). Under these standards, Defendants easily qualify for a protective order against Plaintiff's gambit to depose eight Hess executives, employees, and attorneys.

## I. THE TESTIMONY SOUGHT IS NOT RELEVANT.

The basic problem is that Plaintiff cannot show the noticed depositions are relevant for resolving the narrow jurisdictional issue that Plaintiff raised. Plaintiff sought, and Defendants agreed to, limited discovery into facts relevant to the applicability of 28 U.S.C. § 1359. That provision provides that a "district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Specifically, Plaintiff argues that the merger in May 2020 of HOVIC with and into HONYC was a sham transaction for the exclusive purpose of making HOVIC eligible for federal jurisdiction in lawsuits where the parties were otherwise completely diverse. In search of support for this argument, Plaintiff casts a wide net in the hope that *some* of

the individuals noticed *may* have knowledge regarding the HOVIC / HONYC merger. Under controlling Third Circuit law, however, none of the individuals' testimony will aid in the resolution of the precisely-defined jurisdictional issue that Plaintiff wishes to litigate. Indeed, Plaintiff has already obtained all the discovery required for the Court to resolve the question—and as the facts and precedent described below make clear, jurisdiction is proper in this Court, rendering any further discovery into the issue irrelevant and unreasonable.

As an initial matter, Plaintiff would be wrong from the start to suggest that HONYC could not validly undertake a merger with the purpose of establishing diversity jurisdiction. The objective of establishing diversity jurisdiction, standing alone, is insufficient as a matter of law to trigger the application of § 1359. The Third Circuit's decisions are clear: "***parties can enter into a transaction to create diversity,*** so long as the transaction is legitimate." *Land Holdings (St. Thomas) Ltd. v. Mega Holdings, Inc.*, 283 F.3d 616, 619 (3d Cir. 2002) (emphasis added). In *Land Holdings*, the Third Circuit affirmed the District of the Virgin Islands' entry of summary judgment in favor of a non-resident corporation, to which a mortgage on property in the Virgin Islands had been assigned at the same time that fee ownership of the property was assigned to a Virgin Islands citizen. *Id.* Rejecting the defendant's argument that the mortgage assignment violated § 1359, the court noted that "the legitimacy of the transfer or assignment . . . is a ***far more important factor*** in determining whether jurisdiction was collusively manufactured than is the motive of the parties for the assignment." *Id.* (emphasis added). The Supreme Court has also long held that a "transfer is not improper or collusive even if motivated by a desire to create diversity," if "the transferor retains no interest in the subject matter and the transfer is unconditional." *Nobel*

*v. Morchesky*, 697 F.2d 97, 101 (3d Cir. 1982) (citing *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 n.9 (1969); *Cross v. Allen*, 141 U.S. 528, 533 (1891)). Critically, in the context of a business entity's change in citizenship—similar to the situation in this case—the Third Circuit confirmed that establishing diversity may be a significant—even a "primary"—motivation, as long as "the change of citizenship is actual and not temporary or illusory." *Id.* at 101–02 (citation omitted).

Plaintiff's attempt to force this case into the framework of § 1359 would require deviating from the Third Circuit's established approach to "collusive" joinder doctrine. Federal cases from courts within the Third Circuit make clear that a merger like HOVIC's merger into HONYC provides no basis for a challenge under § 1359. In *Franco, Lewis & Co. v. Callahan*, 1994 WL 744304, at *2 (D.N.J. Aug. 22, 1994), the defendant began operating in the form of a new company organized in the plaintiffs' state of residence after suit was filed. Shortly thereafter, however, the defendant created a second, non-resident company and merged the former into the latter. *Id.* at *2, *14. The plaintiffs argued that the resident company—despite having merged into the new company with diverse citizenship—should be considered an indispensable party whose joinder would defeat diversity jurisdiction. The court rejected this argument:

> A Delaware company, seeking to maintain the benefits of its Delaware residency, but desiring also to obtain diversity jurisdiction, may not assign its interests to an out-of-state corporation exclusively for the purpose of gaining access to the federal courts under 28 U.S.C. § 1332. However, a company which ***abandons its residency*** and associated privileges in one state for another ***should not be restrained by a residency status it no longer enjoys***."

*Id.* at *15 (emphasis added).

7

Like the corporation in *Franco*, HOVIC has in this case "abandon[ed] its residency" in the Virgin Islands and become a resident of New York by ceasing to exist separately from HONYC. *Id.*; *see generally* Ex. 1, HONYC 000001–000115 (describing effect of merger). In light of these facts, which are undisputed on this record, any inquiry into subjective knowledge that the noticed individuals might have had about the merger is both irrelevant and disproportionate to the needs of the case. But if there were any doubt about the legitimacy of the HOVIC / HONYC merger and HOVIC's attendant change in citizenship, Defendants proffer a declaration from Mark Grinfeld, a Director in Hess's Tax Department. Ex. 2, Grinfeld Decl. Mr. Grinfeld certified HONYC's interrogatory responses on this issue, Ex. 1, July 30, 2021 HONYC's Resps. to Pl.'s First Set of Written Discovery at 13, and Defendants have offered him as a 30(b)(6) witness in lieu of the requested depositions.

Mr. Grinfeld's declaration makes clear that, far from serving as some collusive scheme for creating jurisdiction, the HOVIC / HONYC merger was a legitimate business transaction that permanently reorganized HOVIC into a New York corporation. HONYC, the successor corporation, assumed all the responsibilities of corporate citizenship under the laws of that state:

- HONYC complies with corporate-filing responsibilities under New York law, as HOVIC previously had complied with corporate-filing responsibilities under Virgin Islands law. *Id.* ¶ 6.
- HONYC has assumed all other applicable rights and obligations of New York citizenship. *Id.*
- HOVIC's change in residency is permanent. *Id.*

Moreover, to the extent the motive behind the change in citizenship is relevant to the § 1359 analysis—as discussed further below, it is at most one factor among multiple fact-specific

8

considerations—Mr. Grinfeld's declaration explains that Hess and HOVIC had multiple reasons for the change aside from the benefit of obtaining diversity jurisdiction in litigation:

- HOVIC did not employ anyone or hold real property in the Virgin Islands at the time of the merger. *Id.* ¶ 4.

- HOVIC's leadership made decisions in New York; its board of directors met in New York; all of its directors and most of its officers were located in New York; and its principal place of business was New York. *Id.* ¶¶ 2, 4.

- HOVIC had not owned any joint-venture interest in the Virgin Islands since the beginning of 2016. *Id.* ¶ 6.

- HOVIC had not owned or operated the St. Croix refinery since October 1998. *Id.*

- By changing HOVIC's citizenship to New York, the merger with and into HONYC eliminated the requirement to file an annual income tax return for HOVIC in the Virgin Islands. *Id.* ¶ 5.

- The merger likewise eliminated the requirement to file Virgin Islands franchise tax documents and other corporate documents with the Lieutenant Governor of the Virgin Islands. *Id.* ¶ 5.

- Over the past two years, Hess has been pursuing, and continues to pursue, a strategy of simplifying its legal entity structure, involving the liquidation and consolidation of corporate entities that no longer fit Hess's business needs. *Id.* ¶ 3. This ongoing simplification process involved the merger of HOVIC with and into HONYC. *Id.* ¶ 4.

- HONYC may now defend against alleged liabilities of HOVIC, which may include removing to federal court litigation matters that satisfy the requirements for diversity jurisdiction. *Id.* ¶ 5.

This record establishes the legitimacy of the corporate change in citizenship, and it therefore satisfies the Third Circuit's overriding consideration in the collusive-joinder inquiry. The facts of the HOVIC / HONYC merger also address the other factors the Third Circuit has considered in recent decisions applying § 1359. Specifically, in analyzing whether a party has been "improperly or collusively made or joined" in violation of § 1359, the Third Circuit has considered (1) whether the change in citizenship was "final and unconditional," *Nobel*, 697 F.2d

at 101; (2) the "legitimacy of the transfer or assignment," *Land Holdings*, 283 F.3d at 619; (3) whether the transferor retained an interest in the dispute, *Nobel*, 697 F.2d at 101; *Land Holdings*, 283 F.3d at 619; (4) whether there was consideration for any transfer of a claim or interest and the amount of any such consideration, *Nobel*, 697 F.2d at 101; *Land Holdings*, 283 F.3d at 619; and (5) the motivations for the assignment or change in citizenship, including what "legitimate business purpose," if any, motivated the assignment, *Land Holdings*, 283 F.3d at 619.

The merger in this case satisfies these criteria. First, as discussed, the change in citizenship is final and permanent, and Hess, HOVIC, and HONYC complied with all corporate formalities to create a legitimate New York corporation. Thus, the first two considerations identified by *Land Holdings* and *Nobel* are satisfied. Second, HOVIC has ceased to exist and has been replaced by HONYC, a New York corporation; HOVIC has no "interest" in the *McNamara* litigation or any ongoing or future dispute. Third, although there was no monetary consideration for the merger, *see* Ex. 1, July 30, 2021 HONYC's Resps. to Pl.'s First Set of Written Discovery at 9, the existence of HOVIC and HONYC as wholly owned subsidiaries of Hess would have made any such exchange of consideration superfluous. Finally, a range of motivations supported the change—not merely diversity jurisdiction. But even if diversity jurisdiction had been a ***sole*** motivating factor, the Third Circuit's precedent establishes that jurisdiction would still be proper under the other circumstances of this case. *See Nobel*, 697 F.2d at 101–02.

With Mr. Grinfeld having sworn to the facts in his declaration and having certified HONYC's interrogatory responses—which give Plaintiff and the Court everything they need to know to answer the jurisdictional question—Plaintiff cannot plausibly argue that additional

10

testimony is relevant unless he believes that the declaration or Mr. Grinfeld's certification of the discovery responses is untruthful. But if Plaintiff believes Mr. Grinfeld's accuracy or credibility is subject to question, the remedy is to depose him, not any of the numerous individuals currently noticed. HONYC has offered to make Mr. Grinfeld available so that Plaintiff can test the assertions in his declaration without burdening Hess executives, employees, and attorneys. It is difficult to understand what reasonable explanation Plaintiff can offer for resisting this option, which is far better targeted to elicit relevant information and far better tailored to the needs of discovery in this case.

In sum, the documents and other discovery already made available to Plaintiff demonstrate that the merger of HOVIC into HONYC was an actual, final, and legitimate corporate change, resolving the jurisdictional argument Plaintiff has made. HONYC has been forthright about the circumstances of that change, including its motivation, and the facts show that further discovery into the discrete issue on which the parties agreed to conduct discovery would be irrelevant, unduly burdensome, and disproportionate to the needs of the case.

## II. PLAINTIFF'S REQUESTED DISCOVERY WOULD UNDULY BURDEN HESS SENIOR EXECUTIVES MR. GOODELL AND MR. RIELLY.

In addition to the lack of relevancy, Plaintiff should not be permitted to depose Mr. Goodell, Hess's Executive Vice President, General Counsel, Corporate Secretary and Chief Compliance Officer, and Mr. Rielly, Hess's Executive Vice President and Chief Financial Officer, because the depositions would be unduly burdensome to the witnesses. "[T]he right to discovery 'is not unlimited and may be circumscribed.'" *Takacs v. Union Cty.*, 2009 WL 3048471, at *1

(D.N.J. Sept. 23, 2009) (quoting *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)). Applying this principle in the context of depositions, courts routinely "prohibit" or "place significant limitations upon" so-called "apex" depositions of high-ranking executives like Mr. Goodell and Mr. Rielly, *Koken v. Lexington Ins. Co.*, 2005 WL 6051364, at *1 (E.D. Pa. July 18, 2005), particularly when "the high-ranking official does not have first-hand knowledge of relevant information, or if there are others equally well (or better) situated to provide such information," *British Telecomm. PLC v. IAC/Interactivecorp.*, 2020 WL 1043974, at *8 (D. Del. Mar. 4, 2020). In fact, "courts have held that depositions of high-ranking corporate and government officers will be allowed only upon a showing that those officers have particularly relevant information that is not equally available from other, less burdensome sources." *Id.*

The Court should prevent the depositions of Mr. Goodell and Mr. Rielly because they lack unique first-hand knowledge relevant to the subject matter of this dispute and because the information purportedly sought by Plaintiff is available from other sources.

### A. Mr. Goodell and Mr. Rielly Lack Unique and Relevant Personal Knowledge Required to Depose Apex Witnesses.

Mr. Goodell and Mr. Rielly are "apex witnesses"—high-ranking senior executives of Hess, a major multi-national corporation, with significant management responsibilities and demands on their time. Federal courts within the Third Circuit have required a showing that such apex witnesses possess unique and relevant personal knowledge before allowing their depositions to proceed. *See, e.g.*, *British Telecomm.*, 2020 WL 1043974, at *8. The "unique" requirement takes into consideration the alternatives available to an opposing party for acquiring the information

sought. *See Roman v. Cumberland Ins. Grp.*, 2006 WL 4893479, at *1 n.1 (E.D. Pa. Oct. 26, 2007) ("Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify."). For example, the United States District Court for the District of New Jersey applied this requirement in the context of a business reorganization—one that was far more expansive than the merger of HOVIC and HONYC, and one that was at the center of the parties' substantive dispute. *See Ford Motor Co. v. Edgewood Prop., Inc.*, 2011 WL 677331, at *4 (D.N.J. Feb. 15, 2011). The court determined that the apex witnesses did not possess "superior knowledge" simply because "lower-level executives were required to seek the approval of [the apex witnesses] prior to a proposed sale of corporate assets." *Id.*

The same principle applies in this case. Plaintiff has (and has taken advantage of) other mechanisms for obtaining relevant information, without burdening apex witnesses who have no relevant personal knowledge beyond signing and approving the merger. To be clear, any knowledge Mr. Goodell and Mr. Rielly have about the merger would not be unique and relevant to the jurisdictional question, given the complete factual record already presented in HONYC's discovery responses on the merger issue. As already discussed, the determinative inquiry is into the legitimacy of the merger, a question about which Mr. Goodell's and Mr. Rielly's testimony would add nothing to the documentary record and Mr. Grinfeld's declaration. Mr. Goodell's and Mr. Rielly's status as officers of HONYC similarly has no bearing on the merger at issue, as there is no evidence these senior executives of a multi-national corporation would have unique or superior knowledge of a merger driven by administrative benefits. These are circumstances like

those in Ford, where the court held that "the facts surrounding the sale, decommissioning and remediation of the Edison plant are more appropriately gleaned from other lower-level executives, or through answers to interrogatories." Ford, 2011 WL 677331, at *4.

These depositions are especially disproportionate because Hess has already provided, and offered to provide, significant discovery on the HOVIC / HONYC merger. Courts prohibit depositions of high-ranking executives where those depositions would be duplicative or cumulative of evidence already provided, particularly where a Rule 30(b)(6) witness is available. *Ciarrocchi v. Unum Grp.*, 2009 WL 10676631, at *3–4 (D.N.J. Aug. 27, 2009) (granting protective order prohibiting deposition of high-ranking executive in light of availability of Rule 30(b)(6) witness). As a result of the extensive discovery available to Plaintiff—the production of documents, answers to fifteen interrogatories, answers to eleven requests for admission—as well as the 30(b)(6) witness Hess offers to provide deposition testimony, Mr. Goodell and Mr. Rielly can offer no new relevant information that would justify a deposition. Forcing two senior executive deponents to undertake the same preparation usually given to a Rule 30(b)(6) witness in order to provide the same type of testimony is unduly burdensome and disproportionate. *See Roman*, 2006 WL 4893479, at *1 n.1 (finding that a corporate designee was a preferred alternative to executives who had "no direct knowledge of plaintiff's claim").

### B. Plaintiff Cannot Meet The Heightened Standard Required to Depose Hess General Counsel Timothy Goodell and Associate General Counsel Barry Schachter.

Plaintiff's request to depose Mr. Goodell and Mr. Schachter is inappropriate and warrants a protective order for an additional reason: Mr. Goodell is the General Counsel of Hess

Corporation, and Mr. Schachter is Associate General Counsel. Courts "closely scrutinize" requests to depose the in-house counsel of an opposing party. *See Younes v. 7-Eleven, Inc.*, 2015 WL 12843884, at *2 (D.N.J. Mar. 11, 2015). In determining whether to allow such requests, courts weigh:

> (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony.

*Id.* (citation omitted); *see also Hall v. Hall*, 2014 WL 12703289, at *1 (D.V.I. Oct. 21, 2014) (applying these factors and denying request to depose opposing counsel).

All three factors militate against allowing Plaintiff to depose Mr. Goodell and Mr. Schachter. As to the first factor, Plaintiff's requested discovery is disproportionate to Plaintiff's purported discovery need. The discovery Plaintiff seeks—into an allegedly collusive jurisdictional scheme—is a clear "peripheral concern[]," unrelated to the "central factual issues" of the present asbestos litigation. *See Younes*, 2015 WL 12843884, at *2 (citation omitted). In addition, any deposition of Mr. Goodell or Mr. Schachter would inevitably raise thorny privilege and confidentiality issues. As Hess's General Counsel and Associate General Counsel, the testimony from these two would likely implicate privileged attorney-client communications, mental impressions, and legal strategy related to the merger of HOVIC with and into HONYC or to other matters. For the second factor, there are ample alternative sources that can provide the information sought by Plaintiff. Finally, as to the third factor, there is nothing "crucial and unique" about Mr.

Goodell's or Mr. Schachter's testimony. *See id*. at *4 (citation omitted). Given the wealth of alternative sources to Plaintiff, Plaintiff's request "appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation." *See id*.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter the attached proposed protective order.

**Beckstedt & Kuczynski LLP**
*Attorney for Defendants Hess and HONYC*
2162 Church Street
Christiansted, VI 00820
Tel: (340) 719-8086 / Fax: (800) 886-6831

DATED: September 3, 2021    By:    s/ Carl A. Beckstedt III
Carl A. Beckstedt III, Esq.
VI Bar No. 684
carl@beckstedtlaw.com

**Wilson Elser Moskowitz Edelman & Dicker LLP**
*Attorneys for Defendants Hess and HONYC*
200 Campus Drive
Florham Park, NJ 07932-0668
Tel: (973) 624-0800 / Fax: (973) 624-0808

DATED: September 3, 2021    By:    s/ Carolyn F. O'Connor
Carolyn F. O'Connor, Esq.
carolyn.oconnor@wilsonelser.com
VI Bar R2100

DATED: September 3, 2021    By:    s/ Joseph T. Hanlon
Joseph T. Hanlon, Esq.
joseph.hanlon@wilsonelser.com
VI Bar R2099