## DISTRICT OF THE U.S. VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **James M. McNamara,** | **Civil Action No. 1:20-cv-00060** |
| *Plaintiff,* | |
| | **Jury Trial Demanded** |
| v. | |
| **Hess Corporation & Hess Oil New York Corp.,** | |
| *Defendants.* | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND THIS ACTION TO THE SUPERIOR COURT OF THE VIRGIN ISLANDS ON THE BASIS THAT HONYC WAS COLLUSIVELY JOINED TO MANUFACTURE FEDERAL DIVERSITY JURISDICTION

In his Complaint, Plaintiff named Hess Oil Virgin Islands Corp. ("HOVIC") as a defendant. HOVIC has been a fixture of the U.S. Virgin Islands since its incorporation in 1965.

Just before this action was filed, defendant Hess Corporation ("Hess"), which is the parent company of HOVIC, incorporated a new subsidiary – Hess Oil New York Corp. ("HONYC") – in the State of New York. The day after incorporation, Hess merged HOVIC with and into HONYC. This new business arrangement "maintain[ed] the current structure and organization formalities, but just reincorporated [HOVIC] in New York."[1]  The merger was not driven by business considerations. HOVIC had not engaged in any business for several years, and HONYC was created for no business purpose other than to absorb HOVIC. This "reincorporation" (to borrow Hess's term) was born out of Defendants' motive to litigate this lawsuit in this Court by creating Federal Diversity Jurisdiction.

Hess had actual and specific knowledge that Plaintiff (and hundreds like him) was about to file this very action in the Superior Court of the U.S. Virgin Islands. After an initial set of cases were

---

[1] Exhibit 1, at HONYC 000157.

filed in March 2020, Hess "focus[ed on] moving HOVIC out of the VI as quickly and efficiently as possible." Hess preferred to litigate this action in this Court, but that was not possible because HOVIC's U.S. Virgin Islands citizenship meant that complete diversity is lacking. To achieve its litigation goal of manufacturing Federal Diversity Jurisdiction, Hess concocted the HOVIC-to-HONYC "reincorporation" – *i.e.*, moving its U.S. Virgin Islands subsidiary to New York. It was then primed to remove this action once filed and served.

Defendants' own documents confirm that this reincorporation was designed to create Federal Diversity Jurisdiction where none existed:███████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ This collusive behavior does not create diversity of citizenship, as "[a] district court shall **not** have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined **to invoke the jurisdiction of such court**." 28 U.S.C. § 1359 (emphasis added).

If Hess's citizenship gambit stands uncorrected, any number of ordinary tort cases will be funneled to this Court from the Superior Court through sheer will of defendants. Section 1359 was enacted to counteract the real potential of collusive diversity by preserving the federal judiciary's limited subject matter jurisdiction.

The Court should disregard HONYC's professed citizenship and substitute that of HOVIC in its stead. As HOVIC was a Virgin Islands corporation, complete diversity is lacking. On this record, the Court should remand the case to the Superior Court of the Virgin Islands.

---

[2] Exhibit 2, at HONYC 000782  (emphasis added).████████████████████████ ████████████████████████████████████████████████████████████████████

1. **Legal Standard for Collusive Joinder under 28 U.S.C. § 1359.**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that an action "lies outside this limited jurisdiction." *Id.* A party who invokes federal jurisdiction "carr[ies] . . . the burden of showing that he is properly in court." *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

A specific stature forbids Hess's tactic. 28 U.S.C. § 1359 – entitled "Parties collusively joined or made" – provides that the federal courts lack jurisdiction when "any party, by assignment <u>or</u> <u>otherwise</u>, has been improperly or collusively made or joined to invoke the jurisdiction of such court." (emphasis added). This statute "requires the federal court to dismiss or remand a suit" if it finds that a party was improperly or collusively joined to invoke Federal Diversity Jurisdiction. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 110 (3d Cir. 1990).

Section 1359 is a clear legislative expression. This Court must carefully examine potentially collusive assignments, "which are easy to arrange and involve few disadvantages for the assignor . . . ." *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 (1969). If collusive assignments are permitted, "a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties." *Id.* at 829.

Whether Federal Diversity Jurisdiction has been "manufactured" is a fact question. *McSparran v. Weist*, 402 F.2d 867, 876 (3d Cir. 1968). When analyzing a question of federal jurisdiction, "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323 (3d Cir. 1972).

The collusiveness "inquiry involves the jurisdiction of a federal court, [and] the <u>presumption</u> in every stage . . . is [that the action is] <u>without the jurisdiction of a court of the United States</u>, unless the contrary appears from the record." *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 337 (1895) (emphasis added). Consistent with *Lehigh*, the First, Second, Eighth, and Ninth Circuits <u>presume</u> that

assignments between related companies are collusive because of the significant likelihood that they lack a "legitimate business purpose." *See, e.g., Prudential Oil Corp. v. Phillips Petroleum Co.,* 546 F.2d 469, 475 (2d Cir. 1976) (interpreting *Lehigh* as standing for the proposition that "an intercorporate assignment between a parent and its subsidiary should be treated as presumptively ineffective for jurisdictional purposes").

Form does not trump function: the validity of the transaction under state law does not render the transaction non-collusive under federal law. *See Kramer,* 394 U.S. at 829 (expressly rejecting the contention that "the undisputed legality of [an] assignment under [state] law render[s] it valid for purposes of federal jurisdiction" because it "would render § 1359 largely incapable of accomplishing its purpose").

Section 1359 strips jurisdiction that "has been improperly or collusively made." Those two concepts – *improperness* and *collusiveness* – speak to the purpose and function of an assignment or merger. While "courts will not [typically] inquire into [] motive," it cannot "be entirely ignored in ascertaining [] purpose." *McSparran v. Weist,* 402 F.2d 867, 874 (3d Cir. 1968) (emphasis added). And motive is an important tool in identifying whether a particular arrangement has any "<u>function</u> except [for the new entity's] citizenship." *Id.* at 875 (emphasis added).

Not just any business reason is sufficient. Rather, there must exist a business reason independent of the acquisition of jurisdiction. *Airlines Reporting Corp. v. S & N Travel, Inc.,* 58 F.3d 857, 863 (2d Cir. 1995). Stated differently, the business reason "must be sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum." *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 992 (9th Cir. 1994).

Assignments or mergers made by ongoing businesses are more likely backed by legitimate business reasons. By contrast, companies that lack ongoing business activities yet change their citizenship are less likely to have done so for a legitimate business reason. *See, e.g., Greater Dev. Co. of*

*Connecticut v. Amelung*, 471 F.2d 338, 339 (1st Cir. 1973); *see also* Wright & Miller, Change of State Citizenship, 13F Fed. Prac. & Proc. Juris. § 3638 (3d ed.) (endorsing *Amelung* as "sound").

True business reasons are to be distinguished from make-weight reasons – that is, those pretextual reasons that mask true business intentions. *See Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 645 (1st Cir. 1995) (affirming district court's decision that business reasons for merging, including supposed administrative efficiencies, were "make-weights"); *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 919 (8th Cir. 2015) ("find[ing] no error in the district court's dismissal of [] tax advice as 'make-weight.'").

Courts throughout the country frequently employ multi-factor tests in evaluating legitimacy under Section 1359. For example, the Eight Circuit considers previous connections to the assignment, other assets and business functions besides the assignment, whether consideration was exchanged, timing, retention of control of the thing assigned, interest in the outcome of litigation, motivation to create Federal Diversity Jurisdiction, and the asserted legitimate business purpose. *Branson Label, Inc.*, 793 F.3d at 916–17. The Ninth and Tenth Circuits tack similar approaches. *See Yokeno v. Mafnas*, 973 F.2d 803, 810 (9th Cir. 1992) & *Nat'l Fitness Holdings, Inc. v. Grand View Corp. Ctr., LLC*, 749 F.3d 1202, 1205–06 (10th Cir. 2014).

### 2. Facts

#### a. For 55 years, HOVIC was a Virgin Islands company.

HOVIC was incorporated in the U.S. Virgin Islands in 1965.[3] Throughout its lifetime, HOVIC was a wholly-owned subsidiary of Hess.[4] As of 2019, HOVIC continued to identify 7 Church Street,

---

[3] Exhibit 3, HONYC 000024 ("WHEREAS, HOVIC filed its articles of incorporation with the Office of the Lieutenant Governor of the United States Virgin Islands on August 16, 1965[.]").

[4] *Id.* ("WHEREAS, Hess Corporation, a Delaware corporation ('Hess'), owns all of the issued and outstanding shares of capital stock of HOVIC, comprising 100 shares of common stock[.]"); *see also* Exhibit 4, HONYC's Response to RFA No. 4.

Christiansted, U.S. Virgin Islands as its "principal place of business,"[5] which HOVIC declared was true under penalty of perjury.[6]

The refinery was shuttered on or about February 21, 2012, after which only the terminal operations continued.[7] HOVIC's principal business venture – HOVENSA – filed for bankruptcy on September 15, 2015.[8] Through the bankruptcy, the viable portions of the refinery and the terminal business were sold to Limitree Bay Holdings, LLC on or about January 4, 2016.[9] Even after the 2012 shuttering of refining operations, the 2015 bankruptcy of HOVENSA, and the 2016 disposition of the refinery assets (including the terminal operations), HOVIC remained a Virgin Islands company.

### b.  Hess and HOVIC knew Plaintiff was imminently filing suit.

"[S]ince at least 1987, HOVIC has been a party to lawsuits filed by citizens of the U.S. Virgin Islands who have alleged that they were exposed to toxic substances at the HOVIC refinery."[10] Further, "HOVIC recognized that it had been a party to litigation in the Virgin Islands for decades."[11] And "the formation of HONYC and merger of HOVIC with and into HONYC allowed HONYC to

---

[5] Exhibit 5, Dep. of John Rielly, at 18:23–19:5.

[6] *Id.* at 21:21–22:5.

[7] Exhibit 6, *Hovensa completes Virgin Islands refinery shutdown*, Reuters (Feb. 21, 2012), https://www.reuters.com/article/hovensa-shut/update-1-hovensa-completes-virgin-islands-refinery-shutdown-idUSL2E8DLEL120120221 ("Hovensa LLC completed shutdown of its 350,000 barrel-per-day St. Croix, U.S. Virgin Islands refinery on Tuesday, the company said in a statement.") (last visited December 1, 2021).

[8] *See In re: HOVENSA, L.L.C*, No. 1:15-bk-10003-MFW (D.V.I. Bankr.), at Doc. 1 (Chapter 11 Voluntary Petition).

[9] *See In re: HOVENSA, L.L.C*, No. 1:15-bk-10003-MFW (D.V.I. Bankr.), at Doc. 556 (Amended and Restated Asset Purchase Agreement by and among Limitree Bay Terminals, LLC, Limitree Bay Holdings, LLC, HOVENSA, L.L.C., and Hess Oil Virgin Islands Corp. Dated January 4, 2016) (The "Purchased Assets" included the "Above-Grade Refinery Assets" and the "Terminal Assets".).

[10] Exhibit 4, HONYC's Response to RFA No. 1.

[11] Exhibit 4, HONYC's Responses to RFA Nos. 2 & 3.

appear and defend the alleged liabilities of HOVIC in any future litigation."[12] This maneuver allowed Defendants "to remove any future actions to United States District Court of the Virgin Islands on the basis of diversity jurisdiction."[13]

   For instance, between 2013 and 2017, more than 400 plaintiffs filed complaints in the Superior Court of the Virgin Islands asserting claims for relief against Hess and HOVIC. Many of those actions were coordinated as *In re Asbestos, Catalyst, and Silica Toxic Dust Exposure Litig.*, Master Case No. SX-15-CV-96 (V.I. Super.) (the "ACS Cases"). ███████████████████████████████
█████████████████████[14]
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████[15]████████
████████████████████████████████████████████████████
███████████████████████████████████████*Id.*██████████
█████████████████████████████*Id.*████████████████████
██████████████████████*Id.*███████████████████████████
██████████████████████████████████████████*Id.*
████████████████████████████████████████████████████
████████████████████████████████[16]██████████████████

---

[12] Exhibit 4, HONYC's Responses to RFA Nos. 2 & 3.

[13] Exhibit 4, HONYC's Responses to RFA Nos. 2 & 3.

[14] Exhibit 7, Declaration of Warren T. Burns, Esq.

[15] *Id.*; *see also* Exhibit 8, ████████████████████████████

[16] Exhibit 9.



In its February 20, 2020, annual report filed with the Securities and Exchange Commission ("SEC"), Hess did not list HOVIC as a subsidiary.[19] "HOVIC was excluded as it was a subsidiary associated with divested assets, discontinued activities and those that when considered in the aggregate as a single subsidiary, would not constitute a significant subsidiary."[20]



On March 3, 2020, the fourteen ███████████ filed complaints in the Superior Court of the U.S. Virgin Islands.[22]  These fourteen ████ plaintiffs allege that they suffer from a lung disease which was caused by the negligence of Hess and HOVIC. *Id.* Their complaints are substantially similar to Plaintiff's complaint herein. *Id.*

        **c.  Immediately after the first cases were filed, Hess set in motion a strategy to "reincorporate" HOVIC as a New York company.**

On March 4, 2020 – the day after the ████ fourteen complaints were filed – Hess and HOVIC

---

[17] Exhibits 10–12, respectively.

[18] Exhibit 13.

[19] Exhibit 4, HONYC's Response to RFA No. 7.

[20] Exhibit 4, HONYC's Response to Interrogatory No. 14; *see id.* at RFA No. 8.

[21] Exhibit 7, Burns Declaration.

[22] *Id.*; *see also* Exhibit 14 (the first page of the fourteen date-stamped complaints).

began discussing merging HOVIC into a new company.[23] Not a week later, on March 10, 2020, local counsel to Hess and HOVIC sent to in-house counsel an email bearing the subject "HOVIC; Transfer of Incorporation to another Domicile; Diversity Jurisdiction."[24] The email included "attachments containing legal advice and analysis regarding the HOVIC-HONYC merger."[25]

On April 13, 2020, Rebecca Doty, Senior Litigation Counsel for Hess (who has been associated with defending toxic tort claims involving Hess and HOVIC for several years), and Mark Grinfeld, an attorney in Hess's tax department, exchanged several emails about Hess's plan to create a new subsidiary into which HOVIC would be merged. Attorney Grinfeld wrote: "Rebecca – we were discussing in the tax department and were wondering why we were merging into a NY corp instead of an LLC (is there an advantage)."[26] Attorney Doty responded: "<u>We chose a NY Corp in order to maintain the current structure and organization formalities, but just reincorporated in New York. My focus is on moving HOVIC out of the VI as quickly and efficiently as possible</u>."[27]

On April 22, 2020, Attorney Doty resumed the conversation: "Good Morning, Mark. . . . I can only imagine how busy you are right now given current events in our industry[28] and I hate to

---

[23] Exhibit 15 (HONYC's privilege log, sorted by date and time), at p. 1, ln. 1.

[24] *Id.* at p. 1, ln. 11.

[25] *Id.*

[26] Exhibit 1, at HONYC 000158.

[27] Exhibit 1, at HONYC 000157 (emphasis added).

[28] The is a likely reference to the impact wrought by COVID-19. A month before Attorney Doty sent this email, the World Health Organization declared COVID-19 a pandemic. Exhibit 16, *WHO Director-General's opening remarks at the media briefing on COVID-19 – 11 March 2020*, World Health Organization (March 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited Dec. 1, 2021). "[T]he pandemic [] severely impacted demand for oil. In response to the resulting sharp decline in oil prices, [Hess's] focus [was] on preserving cash and capability, while protecting the long-term value of its assets." Exhibit 17, *Hess Reports Estimated Results for the First Quarter of 2020* (May 7, 2020), p. 3, https://investors.hess.com/static-files/530b318b-2c09-4427-bc65-1072e69480fb (last visited Dec. 1, 2021). On March 17, 2020, Hess "announced a revised $2.2 billion capital and exploratory budget for 2020, an $800 million reduction from the previous budget of $3.0 billion." Exhibit 18, *Hess Announces*

bother you, but I am hoping to move forward as soon as possible with the HOVIC restructuring. Unfortunately, from my perspective, <u>time is of the essence on this project</u>."[29]

On April 27, 2020, Attorney Doty again wrote Attorney Grinfeld: "Just touching base on the HOVIC re-domicile. . . . Do you have a preferred structure (NY LLC v. corp)?"[30] Attorney Grinfeld responded: "Hess Tax is ok with the inbound merger and to continue with the plan to use a NY corp to save time."[31]

On May 18, 2020, HONYC was incorporated as a New York corporation.[32] "Since its inception, HONYC has always been a wholly-owned subsidiary of Hess."[33] This made HOVIC and HONYC sister companies, with Hess as their common parent. On May 18, 2020, HOVIC and HONYC shared the same directors and officers.[34]

On May 19, 2020 – one day after HONYC was incorporated – HONYC Directors Timothy B. Goodell and John P. Reilly executed a document entitled Consent in Lieu of Meeting of Board of Directors ("HONYC Consent in Lieu").[35] The HONYC Consent in Lieu authorized HONYC to enter into a "Merger Agreement" with HOVIC.[36] Further, the HONYC Consent in Lieu stated that "the

---

*Significant Reduction to 2020 Capital and Exploratory Budget*, (March 17, 2020), https://investors.hess.com/node/28131/pdf (last visited December 1, 2021 (last visited Dec. 1, 2021). And on May 7, 2020, Hess "further reduced its E&P capital and exploratory budget for 2020 to $1.9 billion, a 37 percent reduction from the original budget . . . ." Exhibit 17, *supra*, at p. 3.

[29] Exhibit 1, at HONYC 000157 (emphasis added).

[30] Exhibit 19, at HONYC 000214.

[31] Exhibit 19, at HONYC 000214.

[32] Exhibit 3, HONYC 000024 ("WHEREAS, HONYC filed its Certificate of Incorporation with the New York Department of State on May 18, 2020[.]").

[33] Exhibit 4, HONYC's Response to RFA No. 5.

[34] Exhibit 20, HONYC's Supplementary Responses to ROG Nos. 1 & 2.

[35] Exhibit 21, HONYC 000018 – 21.

[36] Exhibit 21, at HONYC 000018.

Merger is <u>intended to effect the change</u> of HOVIC's state of <u>incorporation</u> from the United States Virgin Islands to the State of New York."[37]

Contemporaneously, Mr. Goodell and Mr. Rielly, who comprised the entirety of HOVIC's Board of Directors, executed a document entitled Consent in Lieu of Meeting of Board of Directors ("HOVIC Consent in Lieu").[38] The HOVIC Consent in Lieu recited that the proposed merger would change  HOVIC's "state of incorporation from the United States Virgin Islands to the State of New York . . . ."[39] It further recited that "the Reincorporation [was] expected to provide various operating and administrative efficiencies to the Corporation and its sole stockholder in light of certain factors . . . ." *Id.*

The Merger Agreement merged HOVIC with and into HONYC, with HONYC as the surviving company.[40] On May 19, 2020, Mr. Goodell and Mr. Rielly executed the Merger Agreement on behalf of HOVIC (in their capacity as directors).[41] Mr. Goodell acknowledged the Merger Agreement on behalf of both HOVIC and HONYC (in his capacities as President of both companies).[42] And Hess, by Mr. Rielly's signatures, consented to the Merger Agreement as the sole stockholder of both HONYC and HOVIC.[43]

In the time between HONYC was incorporated and HOVIC was merged into HONYC, HONYC did not engage in any business.[44]

---

[37] Exhibit 21, at HONYC 000018 (emphasis added).

[38] Exhibit 22, at HONYC 000032 – 35.

[39] Exhibit 22, at HONYC 000032.

[40] Exhibit 23, at HONYC 000050 & 51.

[41] *Id.* at HONYC 000054 & 55.

[42] *Id.* at HONYC 000056 & 57.

[43] Exhibits 24 and 25, HONYC 000046–47 and 000068–70, respectively.

[44] Exhibit 5, Dep. of John Rielly, at 13:16-21; 17:13-24.

No consideration was exchanged for the merger.[45]

A few weeks after the merger, on May 28, 2020, Conor Lynch, an employee with Hess's tax department, asked Attorney Grinfeld,█████████████████████████████████████[46] Attorney Grinfeld responded:████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████ *Id.* (emphasis added).

On June 8, 2020, Attorney Russell Pate, on behalf of the initial fourteen Future Claimants to file suit, asked Attorney Beckstedt, as HOVIC's agent for service of process, if HOVIC would waive service.[47] Attorney Beckstedt waived service on HOVIC's behalf. *Id.*

On June 16, 2020, Plaintiff (along with sixteen other claimants) filed suit in the Superior Court of the U.S. Virgin Islands.[48] Attorney Pate, on behalf of Plaintiff and those sixteen other plaintiffs, on July 31, 2020 asked Attorney Beckstedt, as HOVIC's agent for service of process, if HOVIC would waive service.[49] On August 12, 2020, Attorney Beckstedt waived service on HOVIC's behalf. *Id.* However, he neither mentioned nor acknowledged that HOVIC no longer existed as a corporate entity. *Id.* Counsel to Plaintiff remained unaware that HOVIC had been merged out of existence in May 2020.[50]

Since its May 2020 formation, HONYC has not earned any income "other than the $1,000 received in connection with Hess Corporation's subscription for 1,000 Shares of Common Stock of

---

[45] Exhibit 4, HONYC's Response to RFA No. 11.

[46] Exhibit 2, at HONYC 000782 .

[47] Exhibit 26, Declaration of J. Russell B. Pate, Esq.; Exhibit 27 (email chain).

[48] Exhibit 28 (first, date-stamped page of the complaints).

[49] *See* n. 50, *supra.*

[50] Exhibit 26, Pate Declaration.

HONYC at the cost of $1.00 per share on May 18, 2020 . . . ."[51] Nor has it ever done any business – except to defend lawsuits intended for HOVIC.[52]

Plaintiffs propounded an interrogatory asking HONYC to identify what non-HOVIC assets it owns; the source(s) of those assets; and which were not inherited from HOVIC. HONYC refused to answer.[53] Plaintiff also propounded an interrogatory asking HONYC to identify what liabilities (whether actual or potential); the sources of those liabilities; and which of those liabilities were not inherited from HOVIC. HONYC refused to answer.[54]

In addition to HOVIC, HONYC has merged with one other company – its subsidiary, HOVIC Marketing Corp.[55] HOVIC Marketing Corp. was a Virgin Islands company.[56]

In its March 1, 2021 annual report filed with the SEC, Hess did not list HONYC as a subsidiary.[57] HONYC was excluded because it is associated with divested assets and discontinued activities.[58] Since HONYC's incorporation, HONYC has not engaged in any business.[59]

### 3. Analysis

HONYC's exclusive business is to hold HOVIC's liabilities to create diversity of citizenship with the Hess family of companies. For ease of discussion, Plaintiff follows a multi-factor rubric based on the approach of many federal courts. Each factor demonstrates that the merger is collusive, and

---

[51] Exhibit 4, HONYC's Response to RFA No. 8; *see also* RFP No. 5 (responding that there are no "[d]ocuments evidencing any income of HONYC since its formation").

[52] Exhibit 5, Dep. of John Rielly, at 40:15–20.

[53] Exhibit 4, HONYC's Response to Interrogatory No. 7.

[54] Exhibit 4, HONYC's Response to Interrogatory No. 10.

[55] Exhibit 4, HONYC's Response to Interrogatory No. 9.

[56] Exhibit 29, HONYC 000385.

[57] Exhibit 4, HONYC's Response to RFA No. 9.

[58] Exhibit 4, HONYC's Responses to ROG No. 15, RFA Nos. 10 & 11.

[59] Exhibit 5, Dep. of John Rielly, at 40:15–20.

that this case should be remanded back to Superior Court.

    **a. Previous Connection, Retention of Control, Influence, and Interest**

Before the merger, Hess was the parent company of HOVIC. And both before and after the merger, Hess was and is the parent company of HONYC.[60] For a fleeting moment in time, HONYC and HOVIC were sister companies. *See Prudential Oil*, 546 F.2d at 475 (presuming that transactions between sister companies are collusive).

Regardless of whether a presumption of collusion attaches, the evidence reveals that the merger was collusive because of the intimate connections between Hess, HOVIC, and HONYC. Three reasons illustrate.

*First*, At the time of the merger, HONYC and HOVIC shared the same roster of directors:

| HOVIC's Directors in 2019 & 2020 | HONYC's Directors Since Its May 2020 Formation |
| --- | --- |
| Timothy B. Goodell | Timothy B. Goodell |
| John P. Rielly | John P. Rielly |

And they shared the same roster of officers:

| Offices | HOVIC's Officers in 2019 & 2020 | HONYC's Officers at Its Formation |
| --- | --- | --- |
| President | Timothy B. Goodell | Timothy B. Goodell |
| Vice President | John P. Rielly | John P. Rielly |
| Treasurer | John P. Rielly | John P. Rielly |
| Secretary | Barry Schacter | Barry Schacter |
| Assistant Secretary | Jacqueline Asafu-Adjaye | Jacqueline Asafu-Adjaye |

---

[60] Exhibit 4, HONYC's Responses to RFA Nos. 4 & 5.

*Second*, the reincorporation was done with the express purpose of benefiting Hess, the common parent.[61] [62]

*Third*, Hess is presently represented by the same legal counsel as it was before and during the merger.[63] *See 3Btech, Inc. v. Wang*, No. 3:20-CV-637, 2021 WL 1549737, at *6 (N.D. Ind. Apr. 20, 2021) (describing "the presence of attorney overlap between the assignor parties and the assignee parties" as a "key consideration").

### b. No Other Assets or Liabilities

HOVIC did not engage in any business prior to the merger, and HONYC has not engaged in any business thereafter.[64] Further, upon information and belief, HONYC owns no other assets than those it inherited from HOVIC (including the stock of HOVIC Marketing Corp., a subsidiary with which it later merged), and it holds no other liabilities than those it inherited from HOVIC.[65] This is overwhelming evidence of collusiveness. *See Branson Label*, 793 F.3d at 917; *Toste Farm*, 70 F.3d at 645.

### c. Motivation to Create Diversity

Hess admits that its decision to create HONYC was motivated, at least in part, to create complete diversity of citizenship between itself and Plaintiff.[66] Motive matters because it elucidates

---

[61] Exhibit 5, Dep. of John Rielly, at 42:20–43:14.

[62] *See* Exhibit 2, at HONYC 000780 – 781.

[63] Exhibit 4, Responses to Interrogatory Nos. 3–6 (Kirkland & Ellis, Wilson Elser, and Beckstedt & Kuczynski represented Hess and HOVIC prior to the merger); *see also* the CM/ECF Docket Sheet, from which the Court should take judicial notice that attorneys with Kirkland & Ellis, Wilson Elser, and Beckstedt & Kuczynski presently represent Hess and HONYC in this litigation).

[64] ; Exhibit 5, Dep. of John Rielly, at 13:16-21; 17:13-24.

[65] *See* HONYC's Response to RFP No. 7 (averring that HONYC does not have any "[d]ocuments evidencing whether HONYC has any actual or potential liabilities besides those it inherited from HOVIC").

[66] Exhibit 4, HONYC's Response to RFA Nos. 2 & 3; Doc. 56-2, Declaration of Mark Grinfeld, at p. 3; Exhibit 5, Dep. of John Rielly, at 63:9–11 & 64:2–3.

whether a business entity has any "function except [for its] citizenship." *McSparran*, 402 F.2d. at 875.

The creation of Federal Diversity Jurisdiction was a significant motivating factor (perhaps the sole factor) that precipitated the merger. Hess and HOVIC had been sued in the Superior Court of the U.S. Virgin Islands on many prior occasions, and they had just been sued by fourteen new plaintiffs on March 3, 2020. Hess and HOVIC already received Tolling Letters on behalf of at least 661 claimants, and the pre-suit resolution process outlined in had broken down.

Hess and HOVIC knew that Plaintiff would be suing them in the Superior Court shortly.[67] If Hess were to litigate those actions in federal court, it need to "mov[e] HOVIC out of the VI as quickly and efficiently as possible."[68] This move – initiated by Hess's legal department – meant that ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████[69]

### d. Timing

More than just suspicious, the timing for the merger confirms the true reason for the HOVIC-to-HONYC Reincorporation. Prior to the merger, HOVIC had not engaged in any business for years, yet found it necessary to spend time and resources to "Reincorporate" three months into a global pandemic – with time being of the essence and urgency being required.

The most reasonable explanation for the timing is that HOVIC was merged out of existence to create Federal Diversity Jurisdiction because Hess knew (or expected) fourteen of the 661 Virgin Islanders who were included in a Tolling Letter had already filed (or would soon file) lawsuits in the Superior Court. And the remaining 647 were sure to follow. The day after those fourteen plaintiffs filed, Hess (initiated by the in-house attorney responsible for defending these claims) began discussing

---

[67] *See* Exhibit 4, HONYC's Responses to RFA Nos. 1–3.

[68] Exhibit 1, at HONYC 000157.

[69] Exhibit 2, at HONYC 000782 .

the creation of a new non-Virgin Islands subsidiary into which HOVIC would be merged.[70]

The timing is even more suspicious because of the haste with which Hess acted. *See Branson Label, Inc.*, 793 F.3d at 918 (finding "expedited timing [] even more suspicious" because the purported explanation for the merger "did not require that the . . . merged [be done] in such haste" to achieve the professed tax goals). In her written correspondence, Attorney Doty confirmed that Hess's goal was to "mov[e] HOVIC out of the VI [] quickly."[71] But acting <u>quickly</u> was incongruent with the Consent in Lieu's note that merger was to create "operating and administrative efficiencies" in Hess's business structure, because Hess achieved <u>quickness</u> by "maintain[ing] the current structure and organization formalities" of HOVIC. *Id.*

There is no evidence in the record that Hess and/or HOVIC had considered its "reincorporation" strategy prior to the new wave of lawsuits that were filed in March 2020. *See Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 864 (2d Cir. 1995) (discounting the professed justifications for an assignment as "suspect" where the assignee was not "preoccupied with its asserted concerns prior to the prosecution of [that] litigation"). Within a week of the new cases being filed, Hess was advised by V.I. counsel Attorney Beckstedt on "Transfer of Incorporation to another Domicile; Diversity Jurisdiction."[72] Hess's express goal was to "mov[e] HOVIC out of the VI [] quickly . . . ."[73] Even though Hess was bogged down with "current events in [the oil and gas] industry" in April 2020 as a result of the COVID-19 pandemic, "time [was] of the essence" as more tolled actions were going to be filed in the Superior Court. *Id.*

---

[70] Exhibit 15 (HONYC's privilege log, sorted by date and time), at p.1, ln.1.

[71] Exhibit 1, at HONYC 000157.

[72] Exhibit 15, at p.1, ln. 1 (emphasis added).

[73] Exhibit 1, at HONYC 000157 (emphasis added).

### e. No Consideration & Non-Arms-Length Transaction

This factor weighs strongly in favor of finding that the merger was collusively done to manufacture Federal Diversity Jurisdiction. HONYC admits that the merger was not supported by consideration.[74] "The lack of consideration and an arm's-length transaction between subsidiaries only makes the possibility of collusion to manufacture diversity more likely." *Branson Label*, 793 F.3d at 918.

### f. Legitimate Business Purpose

According to Hess's internal documents, HONYC was formed, and HOVIC merged with and into HONYC, to "Reincorporate" HOVIC in the State of New York.[75] The HOVIC Consent in Lieu states that the so-called reincorporation was expected to "provide various operating and administrative efficiencies to the Corporation and its sole stockholder [Defendant Hess] in light of certain factors . . . ."[76] But neither that document nor any of other documents produced in discovery, detail how HOVIC's incorporation in the U.S. Virgin Islands was inefficient, or how reincorporation in New York would make business more efficient.

In his Declaration, Attorney Grinfeld echoes the assertion that the reincorporation would be more efficient.[77] Those efficiencies, he contends, include: (i) elimination of the need to file annual income tax returns in the USVI, (ii) elimination of the "requirement to file other corporate documents . . . with the Lieutenant Governor of the [USVI]," and (iii) "a corporate structure and administrative obligations to more accurately address[] the business needs and commercial reality of HOVIC and HONYC."[78]  All three explanations are *post hoc* "make-weight."

---

[74] *See* Exhibit 4, HONYC's Response to RFA No. 11; Exhibit 5, Dep. of John Rielly, at 72:22–73:3.

[75] *See* Exhibit 21, at HONYC 000018; Exhibit 22, at HONYC 000032.

[76] Exhibit 22, at HONYC 000032.

[77] Doc. 56-2, at ¶ 5.

[78] *Id.*

*As to the first*, Hess would have to account for the tax obligations of its subsidiary, regardless of whether that subsidiary was based in the USVI or New York.[79] If Hess was actually motivated by the desire to file less tax paperwork, it would have, consistent with Attorney Grinfeld's declaration, "liquidated [or] consolidated" HOVIC, "result[ing] in the elimination of [the] corporate entit[y]."[80] *See Branson Label, Inc.*, 793 F.3d at 919 (rejecting supposed tax efficiencies as make-weight). Non-papework tax efficiencies are equally suspect. As Attorney Grinfeld acknowledged, ██████████████████ ████████████[81]

*As to the second*, Hess has produced no evidence that the administrative obligations of doing business in New York are any less onerous than doing business in the USVI. Whether based in New York or the USVI, the subsidiaries had to abide by certain filing requirements to stay in good standing.[82] *See, e.g., Toste Farm Corp.*, 70 F.3d 640, 645 (1st Cir. 1995) (dismissing supposed administrative efficiencies as make-weight).

*As to the third*, modern business is done remotely, especially by multinational energy companies with a significant subsidiary footprint across the globe. HOVIC had been run by stateside directors and officers for more than half a century, and there is no evidence that HOVIC's continued existence as a Virgin Islands corporation was inefficient in any particular way. *See Branson Label, Inc.*, 793 F.3d at 919 ("Elfant finds no trouble running these out-of-state companies from his home in Florida; similarly, running a Missouri corporation from a headquarters in Florida would have produced no burden whatsoever."). ██████████████████████████

---

[79] Exhibit 5, Dep. of John Rielly, at 45:7–8, 16.

[80] Doc. 56-2, at ¶ 3.

[81] Exhibit 2, at HONYC 000781.

[82] *Compare* N.Y. Bus. Corp. Law § 408 (biennial report requirements) *with* 13 V.I. R. & Regs. § 371-1 (annual report requirements).

███████████████████████████████[83]

Further, while HONYC is a New York corporation, <u>it does not engage in any New York business that would necessitate a reincorporation in New York</u>. *See Toste Farm Corp.*, 70 F.3d at 645 ("Acebes [who controlled two companies that merged] would scarcely be deeply concerned as to where the state of incorporation and principal office of this paper corporation were located, given that there were no employees and no ongoing operations."). Quite the contrary: HONYC is a New York business because Hess did not want HOVIC to be sued in the Superior Court.[84] ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████[85] Reincorporation was the mechanism to make the exit happen "as quickly and efficiently as possible" to maximize the chance for Federal Diversity Jurisdiction.

\*\*\*\*\*

The totality of the circumstances makes clear that HONYC is a sham – an artificial maneuver designed to create Federal Diversity Jurisdiction where none existed. The incorporation of HONYC and its immediate merger with HONYC was purposefully designed to give HOVIC's liabilities the imprimatur of New York citizenship. This Court should disregard Hess's maneuver.

WHEREFORE, Plaintiff prays his motion be granted; that the citizenship of HONYC be disregarded and substituted with that of HOVIC; and that this matter be remanded to the Superior Court of the Virgin Islands.

---

[83] *See* Exhibit 2, at HONYC 000780 – 781.

[84] Exhibit 1, at HONYC 000157 (emphasis added).

[85] Exhibit 2, at at HONYC 000782  (emphasis added). ███████████████ ████████████████████████████████████████████████████████████████

**Date:** December 7, 2021                     Respectfully submitted,

**/s/ C. Jacob Gower, Esq.**
_____
Korey A. Nelson, Esq.
C. Jacob Gower, Esq.
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
jgower@burnscharest.com

Warren T. Burns, Esq.
Daniel H. Charest, Esq.
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, Texas 75201
Phone: (469) 904-4550
wburns@burnscharest.com
dcharest@burnscharest.com

J. Russell B. Pate, Esq.
THE PATE LAW FIRM
P.O. Box 890, St. Thomas, USVI 00804
Telephone: (340) 777-7283
Cellular: (340) 690-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com
SunLawVI@gmail.com

**Counsel to Plaintiffs**

### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2021, a copy of the foregoing was served via email on all counsel of record via CM/ECF.

**/s/ C. Jacob Gower, Esq.**
_____
C. Jacob Gower, Esq.