## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **JAMES M. MCNAMARA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2020-0060** |
| | ) | |
| **HESS CORPORATION and HESS OIL** | ) | |
| **VIRGIN ISLANDS CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**Attorneys:**
**J. Russell B. Pate, Esq.,**
St. Thomas, U.S.V.I.
**Charles Jacob Gower, Esq.,**
**Korey A. Nelson, Esq.,**
**Harry Richard Yelton, Esq.,**
New Orleans, LA
**Warren T. Burns, Esq.,**
Dallas, TX
          *For Plaintiff*

**Carl A. Beckstedt, III, Esq.,**
**Michael A. Rogers, Esq.,**
St. Croix, U.S.V.I.
**Carolyn F. O'Connor, Esq.,**
**Joseph T. Hanlon, Esq.,**
Florham Park, NJ
**Michael F. Williams, Esq.,**
Washington, D.C.
          *For Defendants Hess Corporation and*
          *Hess Oil Virgin Islands Corp.*

**Robert J. Kuczynski, Esq.,**
St. Croix, U.S.V.I.
          *For Defendant Hess Oil Virgin Islands Corp.*

<u>**MEMORANDUM OPINION**</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion to Remand This Action to the Superior Court of the Virgin Islands on the Basis that HONYC was Collusively Joined to Manufacture Federal Diversity Jurisdiction" ("Motion to Remand") (Dkt. Nos. 99, 106) filed by Plaintiff James M. McNamara ("McNamara"). Defendants Hess Corporation ("Hess") and Hess Oil New York Corp. ("HONYC")[1] (collectively, "the Hess Defendants") have filed a Response opposing McNamara's Motion ("Opposition") (Dkt. No. 111), and McNamara has filed a Reply (Dkt. No. 113). For the reasons set forth below, McNamara's Motion to Remand will be granted.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

The issue before the Court goes to the fundamental parameters of federal court jurisdiction over actions setting forth only state law claims when choices made by the parties impact on diversity jurisdiction. In other recent cases, this Court has addressed the actions of various plaintiffs in joining or including defendants that effectively destroyed diversity jurisdiction under 28 U.S.C. § 1332. *See, e.g.*, *Brooks v. Glencore Ltd.,* Civil Action No. 2021-0251, 2022 WL 613292 (D.V.I. Mar. 1, 2022) (addressing propriety of pre-removal inclusion of nondiverse defendant); *Beharry v. Hess Corporation*, Civil Action No. 2020-0078, 2021 WL 2143817 (D.V.I. May 25, 2021) (addressing propriety of post-removal joinder of nondiverse defendant). These cases involved applying 28 U.S.C. § 1447(e) and the doctrine of fraudulent joinder to the addition or inclusion—post- or pre-removal—of a nondiverse defendant to the case.

---

[1] As discussed herein, in a subsequent filing, the Hess Defendants state that HONX is a successor to HONYC (Dkt. No. 120). In addressing the Motion to Remand, however, the Court will refer to the entity where appropriate as HONYC—the successor of Hess Oil Virgin Islands Corporation following the merger—and will refer to HONX only when the context makes it necessary.

Here, the Court must evaluate the limits of diversity jurisdiction when such jurisdiction results from the merger of a nondiverse, local corporation into an out-of-state corporation. This issue is rendered more complicated in the instant matter because the local and out-of-state corporations are both wholly owned subsidiaries of the same parent company and share the same directors and officers. (Dkt. No. 118-18 at 3). The issue presented now calls on the Court to interpret and apply 28 U.S.C. § 1359, often referred to as the anti-collusion statute.

In June 2020, McNamara filed this action in the Superior Court of the Virgin Islands St. Croix Division ("Superior Court") against Hess, a Delaware corporation based in New York, and Hess' wholly owned subsidiary, Hess Oil Virgin Islands Corp. ("HOVIC"), a Virgin Islands corporation with its principal place of business in the Virgin Islands. (Dkt. No. 1-1 at 1, 3). Apparently unknown to McNamara, Hess had merged HOVIC into HONYC, a new Hess subsidiary based in New York, less than one month before the Complaint was filed. (Dkt. No. 111 at 4).

In his Complaint, McNamara, a former employee at HOVIC's oil refinery on St. Croix, asserts local law tort claims against Defendants for injuries he allegedly sustained during his employment at the refinery. (Dkt. No. 1-1 at 2-4). McNamara claims he was exposed to various forms of heavy metals, asbestos, silica, and catalyst dusts while working at HOVIC and that this exposure caused him to develop lung disease. McNamara alleges that Defendants are responsible for his medical condition as a result of their actions relating to the refinery's operations. *Id.* at 3-6. The claims in this case are similar—if not identical—to claims asserted in hundreds of other

cases filed in the Superior Court over the course of many years against Hess, HOVIC, and other entities that have operated at the oil refinery. (Dkt. No. 111 at 3).[2]

Hess asserts that it was served with the Summons and Complaint on or about August 11, 2020, and timely removed the action to District Court. (Dkt. No. 1 at 1). HOVIC—then HONYC— consented to the removal. (Dkt. No. 5). Hess and HOVIC/HONYC then filed a joint Answer to McNamara's Complaint. (Dkt. No. 9). McNamara filed a Motion to Remand the action (Dkt. No. 27), but later withdrew the Motion in order to conduct discovery on the issue of whether the merger of HOVIC and HONYC was done to collusively create federal jurisdiction. (Dkt. No. 42). To this end, the parties exchanged written discovery and conducted various depositions. (Dkt. Nos. 11, 26, 41, 43, 45, 80).

Ultimately, McNamara filed the instant Motion to Remand with a Memorandum in Support. (Dkt. Nos. 99, 118).[3] In his Motion, McNamara argues that the merger of HOVIC—Hess' Virgin Islands corporation—into HONYC—Hess' New York corporation—was done in violation of 28 U.S.C. § 1359 in order to create diversity jurisdiction in this case and other cases that the Hess Defendants knew were forthcoming. (Dkt. No. 118 at 6-13). The Hess Defendants oppose

---

[2] *See, e.g.*, *Beharry*, Civil Action No. 2020-0078, 2021 WL 2143817, at *1 (D.V.I. May 25, 2021); *In re: Refinery Dust Claims*, Master Case No. SX-06-cv-78, 2019 WL 6827590 (V.I. Super. Dec. 13, 2019); *Daniel v. Borinquen Insulation Co. Inc.*, No. SX-98-cv-192, 2017 WL 3381067 (V.I. Super. July 28, 2017); *In re Catalyst Litigation*, No. SX-05-cv-799, 2010 WL 7371974 (V.I. Super. Nov. 18, 2010); *In re: Kelvin Manbodh Asbestos Litigation Series*, Master Case No. 324/1997, 2002 WL 35631513 (V.I. Terr. Oct. 4, 2002).

[3] McNamara initially filed a redacted version of its Memorandum in Support. (Dkt. No. 100). Following Motions to Seal portions of the Memorandum in Support and exhibits filed by McNamara and the Hess Defendants (Dkt. Nos. 101, 109), the Court entered an Order sealing Exhibit 8 to the Memorandum in Support, but otherwise ordering the remaining portions of the Memorandum and the other exhibits to be filed on the public record. (Dkt. No. 114). The unredacted Memorandum and exhibits were filed on February 25, 2022. (Dkt. No. 118).

the Motion arguing that the May 2020 HOVIC/HONYC merger does not violate 28 U.S.C. § 1359 because: (1) HOVIC's merger and change in citizenship is final and unconditional; (2) the Hess Defendants have legitimate business purposes for the merger; and (3) HOVIC, the non-diverse entity, retains no interest in the litigation. (Dkt. No. 111 at 6-7).

On May 9, 2022, HONX, Inc. ("HONX") filed a "Suggestion of Bankruptcy For HONX, INC. and Notice of Stay of Proceedings" ("Notice") informing the Court that HONX—"formerly known as "HONYC" and/or as Hess Oil Virgin Islands Corp."—filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"). (Dkt. No. 120, n.1). In its Notice, the Hess Defendants state that pursuant to Section 362(a) of the Bankruptcy Code, HONX is granted an automatic stay of all proceedings. *Id*. at 1-2.

Following the Notice in this case and other similar cases, the Court issued an Order on July 30, 2022, in *Theodore v. Hess Corporation, et al.*, Civil Action No. 2021-0078 (Dkt. No. 64) requiring the parties—which included the Hess Defendants—to submit legal memoranda addressing: 1) whether the Court is permitted to adjudicate the issue of remand notwithstanding the existence of the automatic stay resulting from the bankruptcy proceedings involving HONX and another debtor in that case; and 2) the scope of the automatic stay as it pertains to each of the non-debtor defendants. *Theodore*, Dkt. No. 64. On August 12, 2022, the Hess Defendants filed a Joint Stipulation on behalf of the parties requesting an extension of time of thirty-five days, until September 16, 2022, to respond to the Court's Order, noting that the Hess Defendants and Plaintiff Theodore were engaged in a bankruptcy mediation and that the parties had agreed to a stay of all active pending litigation. *Theodore*, Dkt. No. 66. The Court granted the requested extension of time. *Theodore*, Dkt. No. 67.

On September 6, 2022, Plaintiff Theodore—represented by the same counsel as McNamara—filed a legal memorandum in response to the Court's July 30, 2022 Order asserting, *inter alia*, that the Court could address the issue of remand notwithstanding the automatic stay. *Id*. at Dkt. No. 72.[4] Then, on September 16, 2022, the Hess Defendants submitted a filing stating their belief that the Bankruptcy Court must issue guidance before a response to this Court's automatic stay inquiries could be filed in *Theodore*. *Theodore*, Dkt. No. 74 at 3. The Hess Defendants stated that they would seek such guidance "promptly," and once received, would file a further response with this Court. *Id*.

To date, the Hess Defendants have not submitted a response to this Court's July 30, 2022 Order in *Theodore*.[5] Nor is the Court aware of any filing by the Hess Defendants that is currently pending with the Bankruptcy Court for the purpose of obtaining guidance regarding the propriety and/or substance of a response to this Court's automatic stay inquiries. In any event, this Court has determined that it has the authority to proceed.

As discussed below, the Court finds that the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code does not preclude this Court from ruling on the issue of remand. Further, the

---

[4] Likewise, on September 13, 2022 and September 16, 2022, Lockheed Martin Corporation and Glencore Ltd., respectively—defendants in *Theodore*—responded to the Court's Order stating that the Court could adjudicate the issue of remand notwithstanding the existence of the automatic stay resulting from the bankruptcy proceedings. *Theodore*, Dkt. Nos. 70 and 78.

[5] Meanwhile, the Court is aware that on September 16, 2022—the same day of the Hess Defendants' filing with this Court—HONX filed a "Motion to Enforce the Automatic Stay," in the Bankruptcy Court arguing, *inter alia*, that Plaintiff Theodore violated the automatic stay by responding to this Court's July 30, 2022 Order. *See Theodore*, Dkt. No. 79; *In re: HONX, Inc.*, Case No. 22-90035 (Bankr. S.D. Tex. 2022) (Dkt. No. 304). This was followed, in succession, by Plaintiff Theodore's withdrawal of her Response to the Court's questions regarding the scope of the automatic stay, *Theodore*, Dkt. No. 79 at 4; Plaintiff Theodore's renunciation of attempts to seek relief from this Court, including a remand, *Theodore*, Dkt. No. 80; and HONX's withdrawal of the Motion to Enforce, *In re: HONX, Inc.*, Dkt. No. 341.

Court finds that, with regard to the claims brought by McNamara in the instant action, the merger of HOVIC into HONYC violates the anti-collusion statute.[6] Accordingly, this matter will be remanded to the Superior Court.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Diversity Jurisdiction

It is axiomatic that federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts possess subject matter jurisdiction only over cases that present a federal question, 28 U.S.C. § 1331, or when diversity of citizenship exists and the value of the claim exceeds $75,000, 28 U.S.C. § 1332(a). The burden of establishing a federal court's subject matter jurisdiction rests on the party invoking that jurisdiction. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016); *The Fred, LLC v. Capstone Turbine Corp.*, Civil Action No. 2020-0029, 2021 WL 1082513, at *1 (D.V.I. Mar. 17, 2021).

For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship between the parties, in that "no plaintiff can be a citizen of the same state as any of the defendants." *Walthour v. City of Philadelphia*, 852 F. App'x 637, 639 (3d Cir. 2021). The Court has an independent and ongoing obligation to ensure that it has subject matter jurisdiction over an action, and to raise the issue *sua sponte* even when the parties fail to raise it. *Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017).

---

[6] The Court notes that while its ruling herein will be deemed to apply to other matters which present appropriately analogous facts and circumstances, the finding of collusive joinder in the instant action should not be read as a blanket ruling that applies to all similar claims brought against the Hess Defendants indefinitely.

B.     **Removal of Cases from Superior Court**

A defendant in a state (or territorial) civil action may remove a case to federal court if the federal court would have had jurisdiction to hear the matter in the first instance. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *The Fred, LLC,* 2021 WL 1082513, at *1. The strict construction of removal statutes honors Congress' power to determine the contours of the federal court's limited subject matter jurisdiction. *See Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them."); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (removal statutes evidence Congress' purpose to restrict the jurisdiction of the federal courts on removal); *see also Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1257 n.8 (3d Cir. 1977) (Congress has restricted diversity jurisdiction, "relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business"). The defendant bears the burden of establishing that removal is proper. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

C.     **Collusive Joinder**

In order to prevent the improper use of diversity jurisdiction, Congress created a statutory guard against manipulation when invoking diversity jurisdiction:  the anti-collusion statute, 28 U.S.C. § 1359. That statute provides:

> A district court shall not have jurisdiction of a civil action in which *any party*, *by assignment or otherwise*, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359 (emphasis added). The statute prevents parties from using assignments or other transfers for the purpose of creating federal diversity jurisdiction. *See, e.g.*, *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 826-27 (1969) (Panamanian corporation's assignment to Texas resident of contract rights involving Haitian corporation—in which the Texas resident promptly reassigned 95% of that interest back to the same Panamanian corporation—was found to be collusive joinder contrary to Section 1359.); *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 339 (1895) (arrangement, without consideration, where a Virginia corporation's shareholders created a new Pennsylvania corporation and conveyed the Virginia company's assets to the new corporation for the express purpose of creating diversity, "must be regarded as a mere device to give jurisdiction to a circuit court"). Whether diversity jurisdiction is improperly "manufactured" in a particular case is a question of fact that must be determined by the district court based on the record before it. *McSparran v. Weist*, 402 F.3d 867, 876 (3d Cir. 1968) (noting that in a diversity jurisdiction inquiry there is a presumption that federal jurisdiction is lacking, "unless the contrary appears from the record.")

The purpose of 28 U.S.C. § 1359 is to prevent collusive assignments that would have the effect of channeling a "vast quantity of ordinary contract and tort litigation into federal courts." *Kramer*, 394 U.S. at 828-29. Further, the Third Circuit has acknowledged that there is "a qualitative difference between a device designed to invoke federal jurisdiction and one designed to avoid it . . . . In the latter [circumstance], a case depending on state law merely remains in the state court." *Boyer*, 913 F.2d at 111 (citing STUDY OF THE DIVISION OF JURISDICTION BETWEEN STATE AND FEDERAL COURTS, at 160 (Am. Law. Inst. 1969)).

### III.    DISCUSSION

**A.    Impact of the Automatic Stay on Remand Proceedings**

The Court will first address the propriety of resolving McNamara's Motion to Remand during the pendency of a bankruptcy automatic stay pursuant to 11 U.S.C. § 362(a). The Court finds that it is permitted to address the issue of remand notwithstanding the automatic stay as applied to HONX.

First, Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay of"

> (1) the *commencement or continuation*…of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ...

11 U.S.C. § 362 (a)(1) (emphasis added). The purpose of the automatic stay is to "give[] the bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions" and "[it] protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." *Schaffer v. Atl. Broad. of Lindwood NJ Liab. Co.*, Civil No. 10-5449, 2011 WL 1884734, at *3 (D.N.J. May 17, 2011) (citing *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)).

Since the instant action was filed prior to HONX's filing of bankruptcy, there is the issue as to whether addressing the issue of remand constitutes a "continuation of the action" pursuant to 11 U.S.C. § 362(a). Courts in the Third Circuit and other jurisdictions have been virtually unanimous in finding that an automatic bankruptcy stay does not prevent remand of an improperly removed action because remand is not a prohibited "continuation" of the action under § 362. *See,*

*e.g.*, *Anderton v. 3M Co.*, Civil Action No. 18-14949, 2019 WL 2009788, at 1 n.1 (D.N.J. May 7, 2019) (remanding case to state court despite existence of automatic stay where district court lacked diversity jurisdiction); *Schaffer*, 2011 WL 1884734, at *4 (remanding case to state court despite defendant's post-removal bankruptcy proceeding after district court found that it lacked subject matter jurisdiction); *Evans v. Anderson*, 2010 WL 118398, at *1 (N.D. Cal. Jan.7, 2010) ("[W]here the district court lacks jurisdiction over the action filed before it the court is not without power to remand the action and the stay does not deprive it of that power.") (internal citation omitted). As the court in *Schaffer* explained, in "remanding the lawsuit to state court, a district court expresses no opinion regarding the merits of the plaintiff's claim. Instead, the district court merely determines that the appropriate forum for litigating the merits of the plaintiff's claim is a state court of general jurisdiction." *Schaffer*, 2011 WL 1884734, at *4; *Price v. Chrysler LLC*, No. 09CV00232, 2009 WL 2208298, at *1 (E.D. Mo. July 23, 2009) ("The Court's decision to remand this action to state court is essentially a lateral move to address a procedural issue, and it does not continue the case in any significant matter.").

Further, the Court finds that addressing the issue of remand does not affect HONX's financial status, assets, or creditors' standing in the bankruptcy proceeding which the automatic stay is designed to protect. *See Schaffer*, 2011 WL 1884734, at *4 (remand would not further the collection efforts of debtor's creditors, or otherwise encourage creditors to harass debtor during the pendency of the bankruptcy proceedings). Because remand is a procedural issue rather than an adjudication on the merits, it does not place HONX "in [a] better or worse position, legally or financially, than the position it occupied at the time of removal." *Hudgens v. Deer Valley Home Builders, Inc.,* Civil Action No. 09-00417, 2009 WL 2878052, at *2 (W.D. La. Sept. 04, 2009) (remanding lawsuit subject to automatic stay provision to state court). Essentially, the Court finds

that addressing the jurisdictional question does not jeopardize or infringe on HONX's "breathing space" or threaten to deplete the estate against the interests of other creditors. *See Anderton*, 2019 WL 2009788, at *1 (citing *Sanders v. Farina*, 67 F. Supp. 3d 727, 730 (E.D. Va. 2014)).

For the foregoing reasons, the Court finds that it may adjudicate the remand issue without violating the automatic stay triggered by the HONX bankruptcy proceeding.[7]

### B.   Collusive Joinder

McNamara contends that Hess' decision to merge HOVIC with the newly created HONYC constitutes a collusive transfer in violation of 28 U.S.C. § 1359. Because of the alleged violation, McNamara argues that the Court lacks jurisdiction in this matter. (Dkt. No. 118 at 6-13). The Hess Defendants disagree, asserting that the absolute and complete transfer of HOVIC's assets to HONYC and the legitimate business purposes for the merger are sufficient to establish that no collusion existed within the meaning of Section 1359. (Dkt. No. 111 at 1-2).

Congress has taken numerous steps over many decades to prevent federal courts from being overwhelmed by actions involving purely state law claims. This varies from clarifying citizenship requirements and raising the jurisdictional amount required for diversity jurisdiction under 28 U.S.C. § 1332, to amending removal statutes, and adopting various provisions that ultimately became the anti-collusion statute, 28 U.S.C. § 1359. *See, e.g.*, *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 350-51 (1961) (the purpose of the 1958 increase from $3,000 minimum to $10,000 for

---

[7] In its filing with the Bankruptcy Court, HONX also asserts that it "believes the question of whether the District Court can adjudicate the issue of remand in a proceeding where the Debtor is a defendant can only be properly answered by [the Bankruptcy Court]." *In re: HONX, Inc.*, (Dkt. No. 304 at 10-11). This Court disagrees. Notwithstanding the stay, this Court retains jurisdiction to determine the applicability of the stay in the instant matter. *See Solis v. Makozy*, Civil Action No. 09-1265, 2012 WL 1458232, at *3 (W.D. Pa. Apr. 27, 2012) (citing *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 384 (3d Cir. 1987) (finding that the non-bankruptcy forum "share[s] concurrent jurisdiction with the bankruptcy court over [the applicability of the automatic stay] and should decide [that issue].").

diversity jurisdiction was designed to reduce federal court congestion); *McSparran*, 402 F.2d at 872-73 (discussing predecessor statutes to Section 1359 and their goal of preventing federal courts from being overburdened with state claims); *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 852 (3d Cir. 1960) (recognizing that new corporate citizenship provisions in Section 1332 were designed to reduce the number of diversity cases coming to federal courts).

In seeking remand, McNamara relies heavily on decisions from various circuit and district courts that have applied a heightened scrutiny or presumption of collusion to assignments between parent companies and subsidiaries as well as assignments by corporations to their officers or directors that create diversity jurisdiction. (Dkt. No. 118 at 3-5). Some courts have held that such assignments are presumptively ineffective to create diversity jurisdiction. *See, e.g.*, *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976) (treating assignment of claims between non-diverse parent and 100% owned diverse subsidiary corporation as presumptively improper and undertaken to manufacture diversity jurisdiction). Others have not so found. *See, e.g.*, *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1314 (11th Cir. 2007) (declining to apply a "presumption of collusion" to intra-corporate assignments *as long as* the transfer is not feigned or "merely colorable"); *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1066-67 (7th Cir. 1992) ("No inference of collusive invocation of jurisdiction can be drawn from the simple fact that assignor and assignee are under common ownership."). Other courts have focused on a heightened scrutiny analysis. *See, e.g.*, *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 917 (8th Cir. 2015) (heightened scrutiny applies to an assignment made between closely related business entities); *McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004) (assignments between related parties—between a parent company and a subsidiary or between a corporation and one of its officers or directors—are "highly suspect" and subject to heightened

scrutiny); *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992) (noting certain assignments—between parent companies and subsidiaries—"warrant particularly close scrutiny" to ensure reasons for assignment are legitimate and not pretextual).

Although the Third Circuit has not opined on whether heightened scrutiny or a presumption of collusion applies to intra-corporate transfers, this Court need not decide this issue for purposes of determining whether Section 1359 is triggered under the circumstances here. Instead, the Court will evaluate the facts of this case based on the underlying factors generally relied on by the majority of courts when considering the propriety of a transfer under 28 U.S.C. § 1359.

There is a general consensus as to the types of factors to be considered in determining whether a finding of collusion is warranted. Among the factors are: (1) whether there are legitimate business reasons for the assignment; (2) whether the assignee had a prior interest in the item or basis for the claim; (3) whether the assignment was timed to coincide with the commencement of litigation; (4) whether there was any consideration given by the assignee; (5) whether the assignment was partial or complete; and (6) whether there was an admission that the motive was to create jurisdiction. *See, e.g.*, *Branson Label, Inc.*, 793 F.3d at 914 (factors listed provide a helpful guide in evaluating the totality of the circumstances); *Federal Realty Inv. Trust v. Juniper Properties Group*, Civ. No. 00-667, 2000 WL 424287, at *4 (E.D. Pa. Apr. 19, 2000) (examining similar factors in reviewing transfer within a complex real estate transaction).

In assessing the propriety of the transfer under the relevant factors, the Court must review the instant merger in the context of the history of Hess and HOVIC's operations on St. Croix. According to the record before the Court, HOVIC was incorporated in the Virgin Islands in 1965 as a wholly owned subsidiary of Hess with its principal place of business in Christiansted. (Dkt. Nos. 1-2 at 1; 118 at 1, 6). HOVIC, allegedly under the control of Hess, operated an oil refinery

on St. Croix from 1968 through at least 1998, and employed McNamara for part of that period. (Dkt. No. 1-2 at 2-3). At some point, the refinery's operations ceased, but HOVIC continued to operate the facility as an oil terminal. Thereafter, HOVIC formed HOVENSA LLC with a Venezuelan company, which operated both the oil refinery and terminal. (Dkt. No. 118 at 6). HOVENSA then filed for bankruptcy in 2015. *In re: HOVENSA, LLC*, No. 1:15-bk-10003 (D.V.I. Bankr.) (Dkt. Nos. 118 at 2; 111-1 at 8). The oil refinery and terminal operations were sold in January 2016 to unrelated parties during the bankruptcy proceedings. (Dkt. Nos. 118 at 6; 111 at 3). After early 2016, Hess and HOVIC's only operations in the Virgin Islands involved litigation. (Dkt. No. 111 at 3). HOVIC was not conducting any business operations and had no employees, but was administratively filing annual tax returns and franchise tax filings with the Virgin Islands government. (Dkt. No. 111-1 at 4, 9).

Over the years, numerous former employees of HOVIC have filed tort actions against the Hess Defendants in the Superior Court of the Virgin Islands for damages they claimed they sustained from their exposure to asbestos, catalyst, and silica while working at the refinery. (Dkt. No. 118-4 at 20); *see also In re: Refinery Dust Claims*, Master Case No. SX-06-cv-78, 2019 WL 6827590, at *1 (V.I. Super. Dec. 13, 2019). Hess has represented that nearly 500 complaints were filed in Superior Court against Hess and HOVIC between 2013 and 2018. *Beharry v. Hess Corporation, et al.*, 2021 WL 2143817, at *1. Many of these cases—against Hess, HOVIC and other Defendants—were consolidated for various purposes within the Superior Court. *See, e.g.*, *In re: Asbestos, Catalyst, and Silica Toxic Dust Exposure Litigation*, Case No. SX-15-CV-96 (V.I. Super. Mar. 11, 2015); *In re: Refinery Dust Claims*, Master Case No. SX-06-cv-78, 2016 WL

2865735 (V.I. Super. May 3, 2016). Throughout this time frame, there is no concrete evidence reflecting that Hess attempted to move HOVIC's operations out of the Virgin Islands.[8]

Ultimately, many of plaintiffs' claims in the pre-2018 cases were settled in September 2018. *See In re Asbestos, Catalyst, and Silica Toxic Dust Exposure Litigation*, Master Case No. SX-15-CV-96, 2018 WL 1989634 (V.I. Super. Apr. 26, 2018). (Dkt. No. 118-1 at 1; 118-10 at 2). As part of the Settlement Agreement, a claims resolution process was established not only for those plaintiffs, but also for future claimants who were represented by McNamara's attorneys. The Agreement established a tolling and claims process for future claimants that involved non-binding mediation. *Id.* One Hess officer, Timothy Goodell, testified in his deposition that while Hess was planning to exit from various foreign jurisdictions where its operations had ceased, he was not aware of any specific conversations about merging HOVIC into an entity outside the Virgin Islands around the time of the 2018 settlement. (Dkt. No. 111-2 at 3-4).

Throughout 2019 and into 2020, McNamara and numerous other former HOVIC employees—through counsel—notified the Hess Defendants of potential negligence claims and sought review through the Settlement Agreement's non-binding mediation process. (Dkt. Nos. 118 at 7-8; 118-8; 118-9; 118-10; 118-11). The first group of these claimants engaged in mediation in late February 2020. The mediation process was unsuccessful and fourteen plaintiffs—not including McNamara—filed civil suits in the Superior Court on March 3, 2020. (Dkt. No. 118-13).

On March 4, 2020, numerous email communications relating to HOVIC started being exchanged between counsel and Hess officials. Based upon a privilege log created by the Hess Defendants, multiple email communications—on nearly a daily basis—listed attorney-client

---

[8] As mentioned *infra*, there is only a vague reference, in an email dated April 6, 2020, to a merger discussion a few years earlier. (Dkt. No. 111-3 at 2).

communications regarding "the HOVIC-HONYC merger." (Dkt. No. 118-14 at 2-36). There were several emails on this subject on March 4th and March 5th bearing the subject/filename "HOVIC question." *Id.* at 2. Then, emails starting on March 10, 2020, and continuing through March 20, 2020, frequently referenced a subject/filename of "HOVIC: Transfer of Incorporation to another Domicile; Diversity Jurisdiction." *Id.* at 2-6. Thereafter, the emails identified in the privilege log had more generic subjects/filenames—although occasional emails bore the subject/filename "HOVIC Re-Domicile Question." *See id.* at 7. Hess stated that all the emails were privileged attorney-client communications about "the HOVIC-HONYC merger." *Id.* at 9-12. Hess has produced one internal email, dated April 6, 2020—with an attachment entitled "HOVIC Reorg 04052020.pptx"—describing a proposed transaction merging HOVIC into a New York corporation. (Dkt. No. 111-3 at 2-5). The sender of the email stated "[w]e discussed this a few years ago (probably pre-GILTI)." *Id.* at 2. Then, in mid-April 2020, Hess personnel were communicating with other attorneys about restructuring HOVIC. One such email stated that the "focus is on moving HOVIC out of the VI as quickly and efficiently as possible." (Dkt. No. 118-1 at 3). Several days later, the same employee repeated that "time is of the essence" with the merger. *Id.*[9]

Hess created a new wholly owned subsidiary, HONYC, as a New York corporation on May 18, 2020. (Dkt. No. 1-4). HONYC conducted no business other than merging with HOVIC on May 19, 2020—2-1/2 months after the new group of lawsuits was filed. HONYC has no separate operations and no employees. (Dkt. Nos. 118-5 at 16; 111-1 at 15). The directors and corporate

---

[9]   During discovery, McNamara requested production of all documents reflecting "[c]orrespondence regarding the merger of HONYC and HOVIC." (Dkt. No. 118-4, at 15). The Hess Defendants objected to this request asserting the request was not relevant to any claim or defense in the case. *Id.* There are no emails or other correspondence predating March 4, 2020 identified in the privilege log or otherwise produced in discovery.

officers of HONYC were the same as those that controlled HOVIC and who approved the HOVIC/HONYC merger. (Dkt. No. 118-4 at 4-5). No value or consideration was exchanged for the merger. (Dkt. Nos. 111-1 at 23-24; 118-4 at 10). Directors of both HOVIC and HONYC executed a document stating that the merger would change HOVIC's state of incorporation to New York and that the "Reincorporation [was] expected to provide various operating and administrative efficiencies to the Corporation." (Dkt. No. 118-21 at 1). Additionally, the Merger Agreement provided that HONYC would appoint the Virgin Islands Lieutenant Governor as its agent for service of process for any future litigation in the Virgin Islands. (Dkt. No. 118-22 at § 6.03). HONYC has admitted that its formation and merger with HOVIC would allow HONYC to appear and defend future litigation in the federal district court based on diversity jurisdiction. (Dkt. No. 118-4 at 21) ("It is admitted that HOVIC recognized that it had been a party to litigation in the Virgin Islands for decades and that the formation of HONYC and merger of HOVIC with and into HONYC allowed HONYC to appear and defend the alleged liabilities of HOVIC in any future litigation and to remove any future actions to [the] ... District Court of [t]he Virgin Islands on the basis of diversity jurisdiction.").

After the merger was completed, internal Hess emails disclose additional information. In one email, a Hess employee asked another about the purpose of the HOVIC/HONYC merger. In response, the Hess employee stated that the "project was initiated by Legal" and that "Legal wanted to terminate the USVI company." It also stated that "[g]oing forward, certain appeals of lawsuits against HOVIC by residents of the USVI will be heard in NY as opposed to the USVI." (Dkt. No. 118-2 at 4).[10] The subsequent emails address various accounting and tax issues relating to the

---

[10] McNamara surmises that this reference to appeals in New York was the result of the employee's mistaken belief that appeals from the District Court of the Virgin Islands would be heard in the

merger. *Id.* at 2-4.

According to HOVIC/HONYC Director John Rielly, Hess was in the process of trying to streamline and simplify its legal entities, ensure efficiencies and reduce administrative costs. (Dkt. No. 111-1 at 9-10, 13). During his deposition, Director Rielly testified that he was not aware of any external auditor's requirements or statutory obligations for the non-operating HOVIC other than the filing of annual franchise tax and income tax returns. (Dkt. No. 111-1 at 11-12). Rielly testified that HONYC would not have to file tax returns in the Virgin Islands and could likely consolidate its income tax returns in New York with other Hess entities based there. *Id.* at 20-22. He also reported that there could be indirect benefits by avoiding record-keeping errors if matters were not properly allocated among non-operating entities such as HOVIC. *Id.* at 13. He considered the merger a way to streamline Hess' legal structure and reduce costs to remain as efficient as possible. *Id.* at 16. Rielly's testimony reflected no information as to why the HOVIC/HONYC merger took place in 2020. His co-director, Goodell did not recall any merger discussions, even after the 2018 settlement of the prior wave of litigation. (Dkt. No. 111-2 at 3-4).

Based on an examination of the various factors used by courts when evaluating the "totality of the circumstances" under 28 U.S.C. § 1359, the Court concludes that the HOVIC/HONYC merger in this case was collusive. This intra-corporate merger involved Hess' creation of a new wholly owned subsidiary corporation with the same directors and corporate officers who controlled HOVIC and whose only purpose was to fill HOVIC's shoes in the current and future litigation. (Dkt. No. 118-4 at 4-5, 21). HONYC has no other operations or employees. As a result, Hess' prior interest and control in defending against claims like McNamara's has not changed.

---

Second Circuit Court of Appeals, not realizing that the Virgin Islands is within the Third Circuit. (Dkt. No. 107 at 2 n.2.).

Similarly, the lack of any consideration for the transaction and the continuity of the directors and officers weigh in favor of a finding of collusion. Further, except for a single email dated April 6, 2020 with a passing reference to discussion of a HOVIC merger "a few years ago," the record is silent as to any contemplation by Hess of moving HOVIC from the Virgin Islands, even after its cessation of direct operations in 1998, or after its joint operations with HOVENSA ended by the sale of the refinery in early 2016, or after the September 2018 settlement of multiple cases. Indeed, HOVIC's domicile does not appear to have raised any significant concerns until a new group of cases were filed in Superior Court on March 3, 2020. Once those cases were filed, communications regarding a merger and the "re-domiciling" of HOVIC started *the very next day* with officials reporting that "time was of the essence." (Dkt. Nos. 118-1 at 3; 118-15). The vague reference in the April 6, 2020 email to an earlier discussion pales in comparison to the flurry of email communications about a merger in March and April 2020, which culminated in an actual merger in May 2020. It is thus clear from the present record that the merger was timed to coincide with the commencement of the new wave of litigation against Hess and HOVIC.[11] The Court also cannot overlook that, despite HOVIC's "complete" transfer of liabilities to HONYC, Hess' interest remained unchanged, and the testimony and emails reflect that the focus of the merger was to change HOVIC's domicile in order to remove litigation from the territorial courts. (Dkt. No. 108-

---

[11] In an attempt to make the case to the contrary, the Hess Defendants are forced to resort to a single email communication in April 2020 with a passing reference to a discussion several years earlier regarding a HOVIC merger, together with John Rielly's vague deposition testimony regarding streamlining by Hess. Any such earlier discussion is clearly overshowed by the communications commenced in the wake of the new wave of litigation in March 2020, and the alleged legitimate reasons—when considered in the historical context describe above—appear pretextual.

2 at 4). Based on the foregoing, the Court concludes that the relevant factors weigh in favor of a finding of collusion.

The Hess Defendants' arguments to the contrary are unpersuasive. Defendants contend that the HOVIC/HONYC merger does not violate 28 U.S.C. § 1359 because the Third Circuit requires only that: (1) the change in citizenship is final and unconditional; (2) Hess and HOVIC have legitimate business purposes for the change; and (3) HOVIC retains no interest in the litigation. (Dkt. No. 111 at 2).[12] Even under this more limited analysis, Defendants' arguments fail.

Most significantly, the Hess Defendants have failed to articulate legitimate business reasons for the merger and the change of HOVIC's residency. Instead, the reasons provided to the Court are tenuous, at best. Hess' witnesses reported that HONYC would not need to register in the Virgin Islands and would not be required to file tax forms here. (Dkt. No. 111-1 at 20-22). While true, they *did* agree that HOYNC would have to comply with New York's corporate registration laws and file some sort of tax returns in New York, even if those returns were part of a related

---

[12] The Hess Defendants rely heavily on *Land Holdings (St. Thomas) Ltd. v. Mega Holdings, Inc.*, 283 F.3d 616, 619 (3d Cir. 2002); *Nobel v. Morchesky*, 697 F.2d 97, 101 (3d Cir. 1982); and *Franco, Lewis & Co., Inc. v. Callahan*, 1994 WL 744304 (D.N.J. Aug. 22, 1994), for the proposition that the motive of the assignment is not relevant under 28 U.S.C. § 1359. (Dkt. No. 111 at 2, 5-7). However, none of the cases so hold. In *Land Holdings*, the Third Circuit stated that the legitimacy of a transfer was a "far more important factor" than motive. The Court did not state, however, that motive was *irrelevant*. Instead, the Court found that the facts—a standard sale of a Note and Mortgage to an unrelated party for substantial consideration—reflected that the assignment was not a sham. *Id.* at 618-20 (emphasis added). Similarly, in *Nobel*, 697 F.2d 97, the Court examined the totality of the evidence—including the motive for the nondiverse partner's decision to retire—in finding that Section 1359 was not violated. *Id.* at 102. Finally, in *Franco, Lewis & Co.,* the court found that the change of residence of a *potential* party—a corporation created after the proper removal of the case based on diversity jurisdiction—was legitimate and "not temporary or illusory" even though part of the motive for the change of residence was to maintain diversity in the case. *Id.* at *15. As one court has observed: "[I]n examining any [Section] 1359 claim of collusion in this jurisdiction, motive must be considered together with a determination as to whether the assignment was real or colorable and whether there is the presence or absence of some independent, pre-existing legitimate interest in the assignee." *Long John Silver's, Inc. v. Architectural Eng'g Prod. Co.,* 520 F. Supp. 753,756 (W.D. Pa. 1981).

corporation's tax filings. *Id.* at 18-19. The Hess Defendants provided no specific information that the merger results in any meaningful savings in registration fees or paperwork, or reduces the Hess Defendants' tax exposure, or provides any other tangible benefit. Nor did they provide concrete substantive information with any specifics about the "indirect benefits" that HONYC Director Rielly claims the merger *might* create. *Id.* at 13. Simply stated, the Hess Defendants' vague generalities appear pretextual and fall far short of establishing that there were legitimate business reasons for the merger.

In this regard, the situation here is unlike that in *Chestnut Street Consolidated, LLC v. Dawara*, 571 F. Supp. 3d 392, 2021 WL 5279874, at *2 (E.D. Pa. Nov. 12, 2021). In *Chestnut Street*, the Court was faced with the question of whether collusion existed when the plaintiff, a Pennsylvania LLC, converted to a Delaware LLC immediately prior to the filing of litigation. *Id.* at *3. In considering the evidence presented, the court found that the plaintiff's conversion served legitimate business purposes designed to minimize tax liability, lower operational costs, protect the anonymity of ownership, and utilize more business-friendly Delaware laws. *Id.* In support of its arguments, the plaintiff provided detailed information about the differences in taxes between Pennsylvania and Delaware; the plaintiff's access to office space at no expense; and the specific Delaware laws that protected the identity of members who allegedly had been previously threatened by the defendants. *Id.* at *4. Here, the Hess Defendants' articulation of their purported legitimate business reasons pales in comparison. This failure alone is a sufficient basis upon which to reject the argument—even under the Hess Defendants' more limited analysis—that the merger does not violate Section 1359.

Further, the notion that HOVIC retains no interest in the litigation is fanciful in the context of this intra-corporate transfer where the interest of the parent company—Hess—remains

unchanged, and the new company—HONYC—had the same directors and corporate officers who controlled HOVIC. The same applies to the issue of the finality and unconditionality of the transfer. As a district court in Illinois observed:

> "While it is not absolutely clear just how an assignment from subsidiary to parent fits into this framework of [collusive assignments], *see Pritchard & Co. v. Dow Chemical*, 331 F. Supp. 1215, 1220 (W.D. Mo. 1971), it is difficult to see how such transfers can ever be 'absolute,' since the transferor can always arrange to have the assigned claim transferred back and can therefore be said to 'retain an interest.'"

*Green & White Const. Co., Inc. v. Cormat Const. Co.*, 361 F. Supp. 125, 127 (N.D. Ill. 1973).

In short, whether considered under the more expansive analysis or the more limited analysis proffered by the Hess Defendants, the conclusion is the same—the Hess Defendants have violated the anti-collusion statute, 28 U.S.C. § 1359, and thus, this Court is precluded by that statute from assuming jurisdiction over this matter.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that, under the totality of the circumstances, the Hess Defendants, by the merger of HOVIC with HONYC, have collusively made HONYC a party to this action to invoke the jurisdiction of this Court. Accordingly, 28 U.S.C. § 1359 deprives this Court of jurisdiction and Plaintiff James M. McNamara's Motion to Remand (Dkt. Nos. 99, 106) will be granted.

An appropriate Order accompanies this Memorandum Opinion.

Dated:  December 12, 2022

_____/s/_____
WILMA A. LEWIS
District Judge